IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JOHN FAIRCHILD and SUSIE FAIRCHILD, individually, and as Independent Administrators of, and on behalf of, the ESTATE OF KELLI LEANNE PAGE and the heirs-at-law of KELLI LEANNE PAGE, *Plaintiffs*, | § § § § § § § § | |
| v. | § § | Civil Action No. 6:19-cv-29 |
| CORYELL COUNTY, TEXAS; STEVEN RUSSELL LOVELADY, and WESLEY HARLAND PELREY, *Defendants*. | § § § § § | |

## **DEFENDANT STEVEN RUSSELL LOVELADY'S MOTION FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY**

TO THE HONORABLE JUDGE OF THIS COURT:

Defendant Steven Russell Lovelady, (hereinafter "Defendant Lovelady" or "Lovelady") timely files this Motion for Summary Judgment based on Qualified Immunity. Defendant Lovelady would respectfully show the Court the following:

### I. STATEMENT OF THE CASE

Plaintiffs John Fairchild and Susie Fairchild, individually, and as Independent Administrators of, and on behalf of, the Estate of Kelli Leanne Page, and the heirs-at-law of Kelli Leanne Page ("Plaintiffs") filed their Original Complaint on January 30, 2019 against Coryell County, Texas, Steven Russell Lovelady and Wesley Harland Pelrey. Docket Entry No. 1. The Joint Scheduling and Discovery Plan sets a bifurcated proceeding allowing the parties to conduct discovery and file dispositive motions on the issue of qualified immunity. Docket Entry No. 21.

Plaintiffs filed their First Amended Original Complaint on March 29, 2019. Docket Entry No. 17. Plaintiffs bring two causes of action against Defendants Lovelady and Pelfrey. *Id*. at pages 40 – 46. These causes of action are brought pursuant to 42 U.S.C. §1983 for alleged violations of the Fourth and Fourteenth Amendments. *Id*.

Defendant Lovelady moves for summary judgment on these claims based on the defense of qualified immunity.

## II. UNDISPUTED FACTS

A. Kelli Leanne Page ("Page") was an inmate at the Coryell County jail and was housed in a separation cell from September 12, 2017 to October 8, 2017. Ex. A at Att. 3 at P-000708.

B. Defendant Lovelady was assigned to be a shift corporal on October 7th and 8th. Ex. C.

C. On October 7th, Page squirted an unknown liquid substance through the food tray slot all over the left side of Defendant Lovelady's body and face during collection of the lunch food trays. Ex. A at Att. 4 at CoryellCty001149-001154 and Ex. C.

D. Defendant Lovelady gave verbal commands and applied chemical agents following Page's refusal to obey the orders to be handcuffed. *Id*.

E. Defendant Lovelady and Officer Washington entered Page's cell and placed her on the wall while putting her in handcuffs. *Id*.

F. Defendant Lovelady went separately to the hospital due to the unknown liquid substance and was released to return to work. Ex. C.

G. The following day, October 8th, Page became very disruptive by banging on her cell door. Ex. B and Ex. C.

H. After multiple orders to stop the disruptive behavior and noncompliance from Page, Defendant Lovelady and Officer Pelfrey attempted to restrain Page with handcuffs through the tray slot. Lovelady and Pelfrey entered Page's cell in an attempt to place Page in handcuffs. Page became assaultive. *Id.*

I. Page gained control over a weapon, Lovelady's handcuffs, and continued to resist the officers' efforts to place her in handcuffs. *Id*.

J. During the incident, Defendant Lovelady was assaulted several times by Page including a bloody bite. *Id*.

K. Page became unresponsive. *Id.*

L. Defendant Lovelady performed CPR on Page. *Id.*

### III. ISSUES FOR CONSIDERATION

A. Whether Defendant Lovelady is entitled to qualified immunity.

B. Whether Plaintiffs created a fact question regarding the alleged constitutional claims for a Fourth and/or Fourteenth Amendment violation.

### IV. ARGUMENT

**A. Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Speaks v. Trikora Lloyd P.T.*, 838 F.2d 1436, 1438-39 (5th Cir. 1988). Rule 56(e) provides, in part:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party. Fed. R. Civ. P. 56(e)(2).

Summary judgment is precluded under Rule 56(c) when the dispute is genuine and the disputed facts might affect the outcome of the suit. *Id.*; *Speaks*, 838 F.2d at 1438-39. To satisfy this burden, the movant must either submit evidentiary documents that negate the existence of some material element of the nonmoving party's claim or defense or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmoving party's claim or defense. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A summary judgment movant who will not bear the burden of proof at trial may meet its initial

burden of establishing that there is no genuine issue of material fact merely by pointing out the absence of evidence supporting the nonmoving party's case. *See Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996); *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-719 (5th Cir. 1995).

Once the moving party has carried that burden, the burden shifts to the nonmoving party to show that summary judgment is not appropriate. *See Exxon Corp. v. Baton Rouge Oil & Chem. Workers Union*, 77 F.3d 850, 853 (5th Cir. 1996); *Stults*, 76 F.3d at 656. The party opposing summary judgment cannot establish a genuine issue of material fact by resting on the allegations made in his pleadings without setting forth specific facts establishing a genuine issue worthy of trial. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied* 506 U.S. 825 (1992). "Mere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment." *Id*.

### B. Qualified Immunity Standard

Qualified immunity shields from liability officials who perform their duties reasonably and applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson v. Callahan,* 555 U.S. 223, 236, (2009). It is generally true that public officials acting within the scope of their authority are shielded from civil liability by the doctrine of qualified immunity. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity protects officers sued in their individual capacity unless the alleged act violates a constitutional right that was clearly established at the time. *Sanchez v. Swyden*, 139 F.3d 464, 466 (5th Cir. 1998). The test for qualified immunity has two parts that a plaintiff must prove in order to prevail. First, the plaintiff must establish that a public official's conduct deprived the plaintiff of a clearly established constitutional right. *Id.* at 466-7. "Clearly established" means sufficiently clear to put a reasonable officer on notice that his conduct may

violate a person's rights. *Id.; see also Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Feagley v. Waddill*, 868 F.2d 1437, 1439 (5th Cir.1989); *Melear v. Spears*, 862 F.2d 1177, 1187 (5th Cir.1989).

The second question for the defense of qualified immunity is whether the official's conduct was objectively reasonable. *See Sanchez*, 139 F.3d at 467. Even if an official violates a person's civil rights, the official may still be entitled to qualified immunity if the conduct was objectively reasonable. *Id.*, *citing Mouille v. City of Live Oak,* 918 F.2d 548, 551 (5th Cir.1990). "Objectively reasonable" means, given the totality of the circumstances confronting the official, viewed objectively, was the action justified. *Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011). In *Pearson v. Callahan*, the United States Supreme Court held that lower courts are free to answer these two questions in any order they choose. *Pearson*, 555 U.S. at 236. "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*.

Once a defendant asserts his/her entitlement to qualified immunity, "the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir.2010).

In this case, Defendant Lovelady was engaged in the exercise of discretionary duties and acted within the course and scope of his duties as a corporal at the Coryell County Jail, with the objectively reasonable expectation that his conduct was reasonable, lawful, and necessary in light of all attendant circumstances. *See* Ex's. B, C, and E. At no time did Defendant Lovelady violate a clearly established constitutional right. *Id*. Nor were his actions objectively unreasonable. *Id.*

Therefore, Defendant Lovelady is entitled to qualified immunity. *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985).

### C. Defendant Lovelady's actions were reasonable and no excessive force was used.

In the first cause of action, Plaintiffs allege that Defendants Lovelady and Pelfrey violated Page's rights guaranteed by the Fourth Amendment that were clearly established. *See* Docket Entry No. 17 at ¶ 91. Further, Plaintiffs allege that their conduct was objectively unreasonable when they "chose to assault [Page], hold her in a prone position on the floor, and handcuff her behind her back, that people such as [Page] with such underlying health conditions, and who are morbidly obese, should not be treated in such a manner." *Id*. at ¶¶ 91-92. Secondly, Plaintiffs allege that Defendants Lovelady and Pelfrey violated Page's rights guaranteed by the Fourteenth Amendment. *Id*. at ¶ 96. Specifically, Plaintiffs claim that the Defendants' actions "constituted impermissible, unconstitutional, punishment of a pre-trial detainee" and that "there were no circumstances allowing Defendants Lovelady and Pelfrey to use the force they chose to use, in punishing [Page]." *Id*. at ¶¶ 96-97. It is well established that Fourth and Fourteenth amendment excessive force claims are analyzed pursuant to the same standard.

The United States Supreme Court has established that excessive force claims should be analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 394-5 (1989); *see* U.S. Const. amend. IV. The core question is whether Defendant Lovelady's use of force was "objectively reasonable," that is, reasonable "in light of the facts and circumstances confronting [the officer], without regard to [his] underlying intent or motivation." *Id.* at 397. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

at 396. Not every push or shove violates the Fourth Amendment and the amount of force used must be put in context of what was necessary in a particular situation. *Id.* at 397.

"Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). The question here is whether Defendant Lovelady "purposely or knowingly" used force against Page that "was objectively unreasonable." *Id.* Further, whether any threat was unreasonable should be viewed from the perspective of a reasonable officer facing the same circumstances and taking into consideration only what Defendant Lovelady knew at the time of the use of force. *Id.* Finally, an officer's decision regarding how much force to use is made "in haste, under pressure, and frequently without the luxury of a second chance." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992).

Thus, in order to show that Defendant Lovelady violated Page's right to be free from excessive force, Plaintiffs must show that a reasonable officer, with the information that Defendant Lovelady had at the time of the incident, would not have used the same degree of force employed by Defendant Lovelady.

The undisputed evidence clearly demonstrates that on the date of this incident, October 8, 2017, Defendant Lovelady served as the shift corporal at the Coryell County Jail. Ex. C. "During that shift, there were only two other officers at the Coryell County jail, Officer Pelfrey and the control room operator." *Id.* Page was housed in a single cell in the separation area of the jail. *Id.* "When working with inmates in the separation area, the Sheriff's Office requires that two officers

are present when opening the doors to separation cells. A sign on the cell door states the following 'ATTENTION; SHALL BE 2 OFFICERS PRESENT WHEN OPENING SEPARATION DOORS SHALL BE 2 OFFICERS TO ESCOT INMATE TO AND FROM ANY ACTIVITY.'" *Id*.

Beginning at 7:48 a.m., Page knocks on her cell door with her hand and appears to push the communication system to speak with the control officer at 7:55. *Id*. and s*ee* Exhibit B at 7:48:43 and 7:55:24, respectively. For the next six minutes or so, Page continues to bang on the cell door and/or the window with her fist, hairbrush or hip/leg. *Id*. at 7:56:47, 7:57:50, 7:58:40, 7:59:02, 7:59:10, 7:59:30, 8:00:53; 8:01:04; 8:01:04, 8:01:33, 8:01:46, 8:01:54, and 8:02:02. Defendant Lovelady went to Page's cell and ordered her to stop banging on the door. Ex. C and Ex. B at 08:02:51. Another inmate at the Coryell County jail, Desmond Dent described the incident as follows:

> Kelly Page was being very loud Sunday morning. I believe she was using a small tea cup, to bang against the door, it was very Nerve Racking. Mr. Lovelady talked with Kelly on several occasions that morning! No sooner as he would come back to the front she would begin banging again, he talked with her very passive on all occasions. But it juest [sic] seemed like she was on a mission for something but, I have no clue. What it sounded like she was yelling for commissary. That's all I remember hearing she was very persistent.

Ex. D (internal quotation marks omitted).

After leaving her cell, Page began an approximate eight (8) minute period of banging on the window with her hairbrush multiple times and used the communication button. Ex. C and Ex. B at 8:03:26, 8:03:36, 8:03:48, 8:03:58, 8:05:23, 8:05:43, 8:05:50 and 08:07:26 – 08:12:50. Officer Pelfrey arrived at her cell and stayed for approximately ten (10) minutes. *Id*. at 8:13 – 8:23.

After Officer Pelfrey left the cell door, Page again used the communication button and began to bang on the window with the hairbrush. *Id.* at 8:27:24 and 8:29. For the previous approximate forty-five (45) minutes, the only officers currently working at the Coryell County jail

had been dealing with an uncooperative and non-compliant Page. Ex's. B and C. Page's persistence and refusal to obey orders became a disruption to the security of the institution and created the potential to damage the cell door or to harm herself. *Id.*

The evidence clearly demonstrates the following:

- Defendant Lovelady is at the cell door and opens the tray slot to communicate with Page. Ex. B at 8:29:41.
- Page shakes her head no. *Id.*
- Defendant Lovelady sprays small bursts of chemical agents. *Id.*
- Page goes to the back of her cell by the sink. *Id.* at 8:30:00.
- The cell door is opened and Defendant Lovelady continues to communicate with Page. *Id.*
- Page grabs the metal sink, spreads her feet apart and attempted to conceal the brush against her stomach. *Id.*
- Defendant Lovelady attempts to gain compliance by the use of chemical agents. *Id.* at 8:30:14.
- Page places a sheet over her head. *Id.*
- Defendant Lovelady attempts to handcuff Page and she grabs onto the sink. *Id.* at 8:30:24.
- Page and Defendant Lovelady go the ground of the cell. *Id.*
- Defendant Lovelady is able to grab the brush from Page and Page attempts to grab Defendant Lovelady's groin area. *Id.* at 8:30:31.
- Defendant Lovelady's handcuffs are knocked loose and Page grabbs them. *Id.* at 8:30:35.
- Page rolls over on her stomach hiding the handcuffs underneath hear. *Id.*
- Defendant Lovelady attempts to gain control of the handcuffs by applying two knee strikes. *Id.* at 08:30:44.
- Defendant Lovelady attempts to roll Page over to gain access to the handcuffs. *Id.* at 08:31:05.
- Defendant Lovelady attempts to use his radio to contact the control officer and Page grabs the hairbrush. Defendant Lovelady is bitten on the hand by Page. *Id.* at 08:31:14 and 08:31:15.
- Page kicks at Defendant Lovelady's groin area and pushes him away. *Id.*
- Defendant Lovelady again attempts to roll Page over and gains control of the handcuffs. She reaches to grab his groin area. *Id.* at 08:31:44.
- As they continue to attempt to place the handcuffs on Page, she attempts to bite Defendant Pelfrey. *Id.* at 08:31:55.

*See also*, Ex. C. Throughout the entire incident, Page refuses to comply, uses profanity, assaults the officers and disobeys orders from Defendant Lovelady. *Id.* Defendant Lovelady finally

is able to apply the handcuffs to both of Page's wrists. Ex. B at 08:32:30. Without his weight on her torso, Defendant Lovelady straddled Page's legs/buttocks. *Id.* and Ex. C. Defendant Lovelady began to assess Page after gaining his breath from the struggle and chemical agents. *Id*. at 08:34:15. Defendants Lovelady and Pelfrey rolled Page over and realized that she was not responding. *Id.* Defendant Lovelady "continued to call her name and shake her chest. I called for assistance and we removed the handcuffs. [He] began CPR and continued until relieved by a deputy sheriff." *Id*. at 08:34:15 – 08:39:25 and Ex. C. Later that day, Defendant Lovelady had to go to the hospital due to the bite from Page that had drawn blood. Ex. C.

Given these facts, Defendant Lovelady acted reasonably when first attempting to gain compliance by: (1) giving verbal commands; (2) a show of force outside the cell door; (3) continued verbal commands; (4) the use of chemical agents through the door; (5) a show of force and verbal commands once the cell door was opened; (6) the use of chemical agents inside the cell; (7) soft hand compliance in an attempt to place handcuffs on Page; (8) struggling to gain control of the weapons (the hairbrush and handcuffs) under Page's control; and (9) the defensive responses to Page's continued resistance, biting of Defendant Lovelady's hands (and continued attempts to bite at the officers) and the kicks/grabs to the groin area.

In their First Amended Complaint, Plaintiffs assert that the use of force was excessive and clearly violated established law. However, the clearly established law demonstrates that Plaintiffs' allegations related to the use of a four-point restraint applied to a morbidly obese woman did not overcome the officers' entitlement to qualified immunity. *Hill v. Carroll County, Miss*., 587 F.3d 230 (5th Cir. 2009)(stating that "Hill's [Plaintiff's] burden was to create a triable fact issue that four-point restraints, which are after all a variety of handcuffing, pose such a serious risk of inflicting death by positional asphyxia that the method is necessarily or frequently disproportionate

to the need to restrain an arrestee. She then had to create a material fact issue as to the unreasonableness of the deputies' use of such force against Loggins [the arrestee] in these particular circumstances.") In *Hill*, the Fifth Circuit stated that, following a thorough review of the trial court record, summary judgment was warranted on excessive force claims as the Plaintiffs failed to develop a material fact issues that the use of force "was unnecessary, excessively disproportionate to the resistance they faced, or objectively unreasonable in terms of its peril." *Id*. at 237.

Similarly, the Fifth Circuit in *Pratt v. Harris County* held that given an arrestee's "'on again, off again' commitment to cease resisting, his recurring violence, and the threat he posed while unrestrained, it was not, under the totality of circumstances, 'clearly excessive' or 'unreasonable.'" *Pratt v. Harris County, Tex*., 822 F.3d 174, 184 (5th Cir. 2016). In *Pratt*, the Court recognizes that the restraint techniques utilized by officers was based on need and discussed the reasonableness of the length of time the restraint was utilized. *Id*. (*citing Khan v. Normand*, 683 F.3d 192 (5th Cir. 2012)).

In the three aforementioned opinions, the officers all utilized a higher level of handcuffing, four-point restraints/hog-tying, and were granted summary judgment based on qualified immunity. Here, Page was only handcuffed behind her back, not in a four-point restraint. Page had only been handcuffed for a little over a minute when Defendant Lovelady began to assess her non-responsiveness. Ex. B at 08:32:30 – 08:34:15.

As Major William Jennings states, "[t]he primary duty of corrections officers is to maintain the safety and security of the inmates, jail staff, and the jail while complying with all mandates put forth by Texas Commission on Jail Standards." Ex. E at ¶ 8. Page was exhibiting disruptive behavior on October 8th that could "distract officers from other activities which might be occurring

in the jail or could result in officers being unable to hear another problem occurring in the jail." *Id.* Such a situation is dangerous as the office "could mask cries for help, an assault or even an attempted escape." *Id*. Finally, this disruptive behavior could "very likely lead to the inmate's injury or the destruction of property." *Id*. at ¶ 9. Here, Major Jennings agrees with Defendant Lovelady's preliminary effort to gain compliance, enter into Page's cell, continued use of force due to Page's noncompliance and obtaining access to the handcuffs, a potential weapon. *Id*. at ¶¶ 10-17. Further, Major Jennings discusses the dangers of allowing an inmate to have control of the hand restraints, which "are typically made out of steel and have jagged teeth as part of the locking mechanism. They can be used as a club or, when they are open, as they were in this incident, they can be used as a hook to gouge people in their mouth, nose eye, or throat." *Id*. at ¶ 16. Lastly, Major Jennings states that

> [t]he judgments and actions taken by the officers were reasonable, required discretion for personal deliberation, decision, and judgment by the officers and the actions of the officers were justified based on the circumstances.

*Id.* at ¶ 19.

It is clear that Plaintiffs cannot establish a genuine issue of material fact based on their allegations that a reasonable officer would not have used the same degree of force employed by Defendant Lovelady when facing the same circumstances. For these reasons, Defendant Lovelady is entitled to qualified immunity because his actions were objectively reasonable and did not violate the Page's constitutional rights.

## V. PRAYER

Defendant Steven Russell Lovelady prays that the Court grants his Motion for Summary Judgment based on Qualified Immunity denying Plaintiffs all relief they are requesting, dismissing Plaintiffs' claims in their entirety, and for such other relief as the court deems just and proper.

Respectfully submitted,

/s/J. Eric Magee
J. Eric Magee
SBN: 24007585
e.magee@allison-bass.com
**ALLISON, BASS & MAGEE, L.L.P.**
A.O. Watson House
402 W. 12th Street
Austin, Texas 78701
(512) 482-0701 telephone
(512) 480-0902 facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of September, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

T. Dean Malone
Michael T. O'Connor
Law Offices of Dean Malone, P.C.
900 Jackson Street, Suite 730
Dallas, Texas 75202
dean@deanmalone.com
michael.oconnor@deanmalone.com
*Attorneys for Plaintiff*

Eric A. Johnston
McGinnis Lochridge LLP
600 Congress Ave., Suite 2100
Austin, Texas 78701
ejohnston@mcginnislaw.com
*Attorney for Defendant Coryell County, Texas*

S. Cass Weiland
Robert A. Hawkins
SQUIRE PATTON BOGGS LLP
2000 McKinney Ave., Suite 1700
Dallas, Texas 75201
(214) 758-1500
(214) 758-1550 (fax)
cass.weiland@squirepb.com
robert.hawkins@squirepb.com
*Attorneys for Defendant Wesley Pelfrey*

/s/ J. Eric Magee
J. Eric Magee