IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JOHN FAIRCHILD and SUSIE FAIRCHILD, individually, and as Independent Administrators of, and on behalf of, the ESTATE OF KELLI LEANNE PAGE and the heirs-at-law of KELLI LEANNE PAGE, | § § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No. 6:19-cv-29 |
| CORYELL COUNTY, TEXAS; STEVEN RUSSELL LOVELADY, and WESLEY HARLAND PELREY, | § § § | |
| *Defendants*. | § | |

## **INDEX OF EXHIBITS**

Exhibit A: Affidavit of Sheriff Scott A. Williams – Business Records

Exhibit B: Affidavit of Sheriff Scott A. Williams – Video of October 8, 2017 Incident

Exhibit C: Affidavit of Steven Russell Lovelady

Exhibit D: Declaration of Desmond Dents

Exhibit D: Affidavit of William Ray Jennings, Jr.

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| JOHN FAIRCHILD and SUSIE FAIRCHILD, individually, and as Independent Administrators of, and on behalf of the ESTATE OF KELLI LEANNE PAGE and the heirs-at-law of KELLI LEANNE PAGE, | § § § § § § § | |
| | § | NO. 6:19-CV-29 |
| Plaintiffs, | § § | |
| v. | § § | |
| CORYELL COUNTY, TEXAS; STEVEN RUSSELL LOVELADY; and WESLEY HARLAND PELFREY, | § § § § | |
| Defendants. | § § | |

## AFFIDAVIT OF SHERIFF SCOTT A. WILLIAMS

BEFORE ME, the undersigned authority, on this day personally appeared Scott A. Williams who is personally known to me, and who, being first duly sworn, stated as follows:

1.    "My name is Scott A. Williams, I am at least eighteen (18) years of age, I have never been convicted of a felony, and I am competent to testify to the facts contained in this Affidavit. The facts contained in this Affidavit are, to my personal knowledge, true and correct.

2.    I am the Sheriff of Coryell County. In this capacity, I am a custodian of records for the Coryell County Sheriff's Office, and am familiar with the manner in which its records are created and maintained by virtue of my duties and responsibilities.

3.    Attached to this Affidavit is a table of contents that contain documents, which are copies of business records of the Coryell County Sheriff's Office.

4.    These records were made at or near the time of each act, event, condition,

01858829v6224/1/AMERICAS

opinion, or diagnosis set forth, and it is the regular practice of the Coryell County Sheriff's Office to make these types of records.

5.    These records were made by, or from information transmitted by, persons with personal knowledge of the matters set forth.

6.    The records were kept in the course of regularly conducted business activity, and it is the regular practice of the Coryell County Sheriff's Office to keep these types of records in the course of regularly conducted business activity.

7.    It is the regular practice of the business activity to make these records."

Further, Affiant sayeth not.



Scott A. Williams

SWORN TO AND SUBSCRIBED before me by Scott A. Williams, on this 5th day of _September_ 2019, to certify which witness my hand and seal of office.

GAY A McCARTY
Notary Public
STATE OF TEXAS
ID#744019-2
My Comm. Exp. Oct 5, 2021

Gay A McCarty
Notary Public in and for the State of Texas

My commission expires: 10/05/2021

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JOHN FAIRCHILD and SUSIE FAIRCHILD, individually, and as Independent Administrators of, and on behalf of the ESTATE OF KELLI LEANNE PAGE and the heirs-at-law of KELLI LEANNE PAGE, | § § § § § § | |
| | § | NO. 6:19-CV-29 |
| Plaintiffs, | § | |
| v. | § § | |
| CORYELL COUNTY, TEXAS; STEVEN RUSSELL LOVELADY; and WESLEY HARLAND PELFREY, | § § § § | |
| Defendants. | § § | |

## TABLE OF CONTENTS TO AFFIDAVIT OF SHERIFF SCOTT A. WILLIAMS

1. April 12, 2017 Booking Record of Kelli Page ................................ CoryellCty0000254-55

2. Jail Record of 2017 Prescriptions of Kelli Page .................................................... 229-230

3. E-mail Referencing Separation Cell from September 12, 2017 to October 8, 2017 ...................................................................................... P-000708

4. October 7, 2017 Incident Report ...................................................... CoryellCty001149-54

5. Excerpt from Jail Policy Manual, Cell Extraction .................................. CoryellCty000823

6. Jail Division Order: 025-JOC .......................................................... CoryellCty000734-35

010-8829-6224/1/AMERICAS

# ATTACHMENT 1



CORYELL COUNTY SHERIFF'S OFFICE
510 LEON ST., GATESVILLE, TX - 76528
Phone (254) 865-7201
Fax (254) 865-7774



## DETENTION - BOOKING REPORT

| | |
|---|---|
| ARREST NO : 2170512 | NAME : PAGE, KELLI LEANNE |

SO NUMBER : 2120709    SEX : F    SSN : 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    DOB : 02/20/1971    AGE : 46

BIRTH PLACE : KANSAS    DOB STATE : TX    RESIDENCE : NO    STATE NO. : 50058969

ALIAS OR NICKNAME(S) :

ADDRESS : 307 SOUTH 5TH STREET    ZIP CODE : 76528    STATE : TX    CITY : GATESVILLE

HOME PHONE : (254) 679-6607    DL NO. : 24357516    DL STATE : TX    DL CLASS : C

DL EXPIRES : 02/20/2013    OTHER ID :    FBI NO : 110367FB7    GANG : NONE

RACE : WHITE    BUILD : MEDIUM    CITIZENSHIP : UNITED STATES    RELIGION : CHRISTIAN

MARITAL STATUS : WIDOWED    HEIGHT : 5.7    WEIGHT : 201.0    SKIN TONE : LIGHT BROWN

HAIR COLOR : BLONDE    HAIR LENGTH : LONG    EYE COLOR : HAZEL EYES

S.M.T. :

### EMERGENCY CONTACT INFORMATION

NAME : FAIRCHILD, JOHN

ADDRESS : 201 N 19TH STREET    ZIP CODE : 76528    STATE : TX    CITY : GATESVILLE

RELATION : FATHER    HOME PHONE : (254) 206-0232

PHONE CALL(S) MADE :    1. N/A    2. N/A    3. N/A

### EMPLOYER / SCHOOL

NAME : UNEMPLOYED

ADDRESS :    ZIP CODE : 0    STATE : TX    CITY :

WORK PHONE : N/A    OCCUPATION : RETIRED

### BOOKING DATE : 04/12/2017    TIME : 07:58:02    ARREST DATE : 04/11/2017    TIME : 07:43:00

WHERE ARRESTED : GATESVILLE    HOW ARRESTED : Warrant

ARREST AGENCY : CCSO    ARREST OFFICER : NIX

BOOKING OFFICER : LOVELADY    SEARCHING OFFICER : LOVELADY

RESPONSIBLE COURT : 52 ND DIST. COURT    WEAPON :    CELL : HA

CLASSIFICATION :    WAS DRUNK : NO    CURSED : NO    SPIT ON/AT OFFICER : NO

WAS DRINKING : NO    RESISTED ARREST : NO    UNDER THE INFLUENCE : NO

EXPECTED RELEASE DATE : N/A    ACTUAL RELEASE DATE : N/A

SENTENCE LENGTH : 0    SENTENCE : 0    HOW RELEASED :

RELEASED TO : N/A    RELEASED BY :

### INVOLVED VEHICLE / FACILITY

YEAR : 0    MAKE & MODEL :    STYLE :    COLOR :

LICENSE NO. :    STATE : TX



CORYELL COUNTY SHERIFF'S OFFICE
510 LEON ST. , GATESVILLE, TX - 76528
Phone (254) 865-7201
Fax (254) 865-7774

# DETENTION - BOOKING REPORT

## CHARGES

| | |
|---|---|
| CHARGE CODE : 35990002 | CHARGE DESC. : MAN DEL CS PG 1 >=1G<4G |
| CHARGE DATE : 04/12/2017 | STATUTE CODE : HSC 481.112(c)   CHARGE LEVEL : F3 |
| DISPOSITION : HELD | DISPOSITION DATE: N/A |
| WARRANT NO. : F3177431 | ISSUING AGENCY : CCSO |
| BOND : 0.00        FINE : 0.00 | |
| AVAILABLE CHARGE COMMENT:   SEE JP | |

| | |
|---|---|
| CHARGE CODE : 35990003 | CHARGE DESC. : MAN DEL CS PG 1 >=4G<200G |
| CHARGE DATE : 04/12/2017 | STATUTE CODE : HSC 481.112(d)   CHARGE LEVEL : F3 |
| DISPOSITION : HELD | DISPOSITION DATE: N/A |
| WARRANT NO. : F3177432 | ISSUING AGENCY : CCSO |
| BOND : 0.00        FINE : 0.00 | |
| AVAILABLE CHARGE COMMENT:   SEE JP | |

| | |
|---|---|
| CHARGE CODE : 00000000 | CHARGE DESC. : FTA-DRIVING WHILE INTOXICATED 2ND (LLANO) |
| CHARGE DATE : 04/12/2017 | STATUTE CODE : PC 00.00   CHARGE LEVEL : <NONE> |
| DISPOSITION : HELD | DISPOSITION DATE: N/A |
| WARRANT NO. : 17076 | ISSUING AGENCY : LLANO CO |
| BOND : 0.00        FINE : 0.00 | |
| AVAILABLE CHARGE COMMENT:   SEE JP | |

| | |
|---|---|
| CHARGE CODE : 00000000 | CHARGE DESC. : FTA-DRIVING W/LIC INV W/PREVCONV (LLANO) |
| CHARGE DATE : 04/12/2017 | STATUTE CODE : PC 00.00   CHARGE LEVEL : <NONE> |
| DISPOSITION : HELD | DISPOSITION DATE: N/A |
| WARRANT NO. : 17077 | ISSUING AGENCY : LLANO CO |
| BOND : 0.00        FINE : 0.00 | |
| AVAILABLE CHARGE COMMENT:   SEE JP | |

| | |
|---|---|
| CHARGE CODE : 00000000 | CHARGE DESC. : CPF-EXSPIRED DRIVERS LIC(LLANO) |
| CHARGE DATE : 04/12/2017 | STATUTE CODE : PC 00.00   CHARGE LEVEL : M* |
| DISPOSITION : HELD | DISPOSITION DATE: N/A |
| WARRANT NO. : 031432209 | ISSUING AGENCY : LLANO CO |
| BOND : 0.00        FINE : 0.00 | |
| AVAILABLE CHARGE COMMENT:   SEE JP | |

CoryellCty000255

# ATTACHMENT 2



**Southern Health Partners**
Your Partner in Affordable Inmate Healthcare

Inmate Name ___Fa___e, Kelli___
DOB or ID#: ___2.20.17___
Allergies: ___NKDA___

Start at top and write subsequent orders below

| Date of Physician's Order: | |
|---|---|
| **1** 6.3.17 | Paroxetine 20mg 1 QD.<br>Spironolactone 25mg BID.<br>Carvedilol 6.25mg 3 tabs BID.<br>Meloxicam 7.5mg 1 QAM.<br>Nortriptyline 10mg 1 QPM |
| **2** | Baclofen 30cc BID<br>Per V/o K. Kirk, NP.<br>_[signature]_<br>_[signature]_ |
| **3** | |
| **4** | |
| **5** | |
| **6** | |

NKDA

# MEDICATION ADMINISTRATION RECORD

| MEDICATIONS | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PAROXETINE 20 MG | AM | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| TAKE ONE Q DAY | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| 5/5/2017 | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| SPIRONOLACTONE 25 MG BID | AM | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| 6/3/2017 | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| | PM | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| CARVEDILOL 6.25 MG TAKE | AM | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| THREE BID 6/5/2017 | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| | PM | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| MELOXICAM 7.5 MG TAKE ONE | AM | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| Q AM | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| 6/3/2017 | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| LACULOSE 30 CC BID | AM | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| 6/3/2017 | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| | PM | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| NORTRIPTYLINE 10 MG | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| TAKE ONE Q PM | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| 6/3/2017 | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| | PM | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| LASIX 40 MG TAKE ONE DAILY | AM | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| 10/5/2017 | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| POTASSIUM 20 MEQ. TAKE | AM | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| ONE DAILY | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| 10/5/2017 | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |

REORDER FROM INTEGRAL SOLUTIONS GROUP • 1-800-235-0767 FORM A-55 STOCK #500423 • www.integralsupplies.com 50-259381 REV. 3/08

CHARTING FOR OCTOBER 2017 THROUGH

Physician DR. PETTIT | Telephone No. | Medical Record No.

Alt. Physician | Alt. Telephone

Allergies NKDA | Rehabilitative Potential

Diagnosis

Medicaid Number | Medicare Number | Complete Entries Checked By: Title: Date:

RESIDENT PAGE, KELLI | D.O.B. 2/20/1971 | Sex | Room # | Patient Code | 008 Date

230

# ATTACHMENT 3

She was on regular checks, 30 mins, and she was checked on within the 30 min time limit. She was in separation from Sep 12,2017 to October 8, 2017. She was housed W-2 before going to separation. The altercation happened in separation cell as well on 10/07/2017.

Lt Porter

**From:** Wendy Wisneski [mailto:wendy.wisneski@tcjs.state.tx.us]
**Sent:** Wednesday, October 11, 2017 3:42 PM
**To:** Jackie Benningfield; Lt. Karen Porter {CORYELL COUNTY JAILADMINISTRATOR}
**Subject:** RE: Kelli Page

Good afternoon, Lieutenant.

After my initial review of the paperwork submitted, I have some additional follow up questions:

Based on I/M Page's assignment to a Sep cell, what type of observation was she on, and how often was she to be observed? How long had she been housed in Sep? Where was she housed prior to Sep? Was she housed in Sep because of the incident that occurred on 10/7/17, where she was in an altercation with officers, or did that altercation occur in Sep as well?

Also, if you could please provide I/M Page's booking sheet, I would appreciate it.

Thank you in advance.

Wendy Wisneski
Critical Incident Inspector
Texas Commission on Jail Standards
P.O. Box 12985
Austin, TX 78711
512-463-8081 office
512-799-6648 cell
wendy.wisneski@tcjs.state.tx.us

**From:** Jackie Benningfield
**Sent:** Wednesday, October 11, 2017 3:00 PM
**To:** Lt. Karen Porter {CORYELL COUNTY JAILADMINISTRATOR} <kporter@sheriff.co.coryell.tx.us>
**Cc:** Wendy Wisneski <wendy.wisneski@tcjs.state.tx.us>
**Subject:** Kelli Page

# ATTACHMENT 4

*Employee Participant Statement*

| I. INCIDENT OCCURRED |
|---|

A Use of Force was used on (date/time): 10-07-2017

B. Location where Use of Force occurred: Separation cell # 4

| II. STATEMENT |
|---|

**Instructions**

Complete Sections a. through e., checking and completing all that apply in each section;
Then at Section f., In as much detail as possible, describe what happened before, during and after the incident occurred, including:
- Time (or approximate time) of incident
- Name of each offender involved
- Name and rank/title of each employee involved; and
- Description of injuries received, if any.

a. Statement of employee (Name printed): CPl Loveladly

b. Where did the use of force occur? *(Give specific location for each one checked)*

- ☒ Cell seperation cell #4
- ☐ Dayroom: Cell
- ☐ Dayroom: Dorm
- ☐ Dorm
- ☐ Hallways
- ☐ Infirmary
- ☐ Kitchen

- ☐ Runs
- ☐ Seg/Sol
- ☐ Showers
- ☐ Staff Office
- ☐ WorkArea
- ☐ Yard
- ☐ Other

c. In describing offender behavior, specify which offender(s) and whether it occurred before or during the use of force incident.

| Before | During | | Offender Name(s) |
|---|---|---|---|
| ☐ | ☒ | Assaulted Officer(s) with weapon unknown liquid | Page, Kelli Leanne |
| ☐ | ☐ | Attempted to assault Officer with weapon | |
| ☐ | ☐ | Attempted Escape | |
| ☐ | ☐ | Attempted to kick Officer(s) | |
| ☐ | ☒ | Displayed abnormal behavior Page, Kelli Leanne | |
| ☐ | ☐ | Fought with other offender | |
| ☐ | ☐ | Kicked Officer(s) | |
| ☐ | ☐ | Physically threatened Officer(s) | |
| ☐ | ☒ | Refused to obey written/verbal orders PAGE, kELLI | |
| ☐ | ☐ | Refused to perform proper hygienic care | |
| ☐ | ☐ | Refused to take medication | |
| ☐ | ☐ | Shoved, pushed and /or grabbed Officer(s) | |
| ☐ | ☐ | Struck Officer(s) with unknown Liquid Page Kelli Leanne | |
| ☐ | ☐ | Swore at Officer | |
| ☐ | ☐ | Verbally threatened Officer(s) | |
| ☒ | ☐ | Other *(Specify):* planned assault waited for officer to open food slot and assaulted with unknow Liquid | |

1

**d. Describe your actions (If more than one offender noted in Section b. Identify against which offender your action was taken):**

☒ Shoved or pushed offender <u>after using chemical agents secured offenders right arm and placed against cell wall</u>

☒ Used restraining holds on <u>secured offender by right wrist and placed against cell wall</u>

☒ Used restraining device(s) on <u>placed hand restraints on offender</u>

   If so, what type; Date/time used; Date/times of relief <u>hand restraints</u>

☐ Struck offender with fist or open hand _____

   If so, how many times? _____ What part of the body was struck? _____

☐ Kicked offender _____

   If so, how many times? _____ What part of the body was struck? _____

☐ Used Riot Baton on _____

   If so, how many times was offender struck? _____ What part of the body was struck? _____

☒ Used chemical agents on <u>Page ,Kelli Leanne</u>

   If so, what type and how much? <u>Saber Red Crossfire 1.5 oz stream spray 2 second burst</u>

☐ Used deadly force against _____

   If so, describe firearm/ammunition used; give manufacturers serial number; How many rounds fired? _____

☐ Other *(Explain):* _____

**e. Why was force used?**

☐ Controlling group disturbance _____    ☐ Response to stopping fights _____

☐ Enforcing orders _____    ☒ Self-defensive Response <u>Page ,Kelli Leanne</u>

☐ Medically-ordered treatment _____    ☐ To prevent escape attempt _____

☐ Response to aiding staff _____    ☒ Other (Specify) <sub>offender continued to assault officer with liquid sprayed o.c. to gain compliance</sub>

**f. Prior to implementing force, did you do any of the following:**

YES   NO                                                             If no, explain why:

☒    ☐    Attempt to calm the offender or solve the problem? _____

☒    ☐    Warn the offender of consequences? _____

☒    ☐    Contact the supervisor? _____

☒    ☐    Request additional staff? _____

☐    ☒    Request a video camera? <u>NONE AVAILABLE</u> _____

☒    ☐    Use restraining devices(s)? _____

**g. Written Statement:**

On 10-07-17 @11:34 am I cpl Lovelady was picking up trays from the after noon meal when I came to s-4 I opened the food slot door I took the tray out when I put it on the cart I turned to close the food slot door inmate page Kelli reached out with a bottle of unknown substance and began to squirt it all over the left side of my body including my face. I then sprayed inmate page Kelli with a short burst of chemical agent. I then ordered inmate page to turn around and be cuffed. Inmate page refused I then opened the door with Officer Washington placed inmate page on the wall and placed handcuffs and escorted to booking desk she was then placed into the restraint chair for her safety and safety of staff.

_____ Attach Continuation page(s), if needed]

**III ACKNOWLEDGMENT**

To the best of my knowledge, the information submitted in this participant statement is complete and accurate.

CPLlovelady                                          CPLlovelady
_____                            _____
Name (print full *name*)                            Rank/Title

                                                    10-07-17
_____                            _____
Signature                                           Date

Use of Force Report
UFO# _____
Witness Statement

## I. INCIDENT OCCURRED

a. Use of Force was used on (date) 10/07/2017 1134
b. Location where Use of Force occurred: SEPARATION CELL #4

## II. STATEMENT

a, Statement of. WASHINGTON, TYRELL 325        JAILER
    (Name printed)            (Rank / Title)

b. Instructions: In as much detail as possible (e.g., time Use of Force occurred; name of each employee and offender involved, if known, etc.), describe what you witnessed:

ON THE TIME AND DATE STATED ABOVE, I OFFICER WASHINGTON ASSISTED CORPORAL LOVELADY WHEN
HE RADIOED ME ABOUT NEEDING ME AT SEPARATION 4 FOR A SITUATION WITH INMATE KELLI PAGE. AS I
WAS APPROACHING THE SCENE, I OBSERVED THE HALLWAY FLOOR IN FRONT OF SEPARATION 2 AND FOR
WAS COVERED IN LIQUID AND CPL. LOVELADY WAS SOAKED WITH SOME SORT OF LIQUID AS WELL. I
OBSERVED CPL. LOVELADY HAD HIS OC SPRAY OUT AND THE FOOD SLOT OPEN. CPL. LOVELADY ADVISED
CONTROL TO OPEN S4'S DOOR ONCE I ARRIVED. ONCE OPENED, CPL. LOVELADY AND I ENTERED S4 AND CPL.
LOVELADY BEGAN GIVING COMMANDS FOR INMATE PAGE TO PUT HER HANDS BEHIND HER BACK. PAGE WAS
GIVEN MULTIPLE ORDERS TO PUT HER HANDS BEHIND HER BACK AND MANY OPPORTUNITIES TO COMPLY.
AFTER THE 3RD ATTEMPT, CPL. LOVELADY PROCEEDED TO WRIST LOCK INMATE PAGE'S RIGHT ARM AND PUT
HER AGAINST THE WALL AND PUT HANDCUFFS ON HER. CPL. LOVELADY ESCORTED INMATE PAGE TO THE
FRONT AND I STRAPPED INMATE PAGE INTO THE RESTRAINT CHAIR. ONCE RESTRAINED, I BEGAN TAKING
PICTURES OF INMATE PAGE AND THE BOTTLE OF UNKNOWN LIQUID THAT CPL. LOVELADY IDENTIFIED THAT
INMATE PAGE USED TO SPRAY HIM. BETWEEN THE TIMES OF 1140-1150 CPL. LOVELADYADVISED HE WOULD
BE 10-6 UP FRONT FOR A MINTUTE. DURING THIS TIME, I BEGAN TO TAKE ALL OF INMATE PAGE'S ITEMS FROM
THE CELL AND HAD THE PORTER MOP AND DISINFECT THE CELL. I THEN PROCEEDED BACK TO THE BOOKING
AREA WHERE CPL. LOVELADY RETURNED AND ADVISED THAT HE NOTIFIED LT. PORTER AND OFFICER
DEPUTY DAYTON. CPL. LOVELADY ALSO ADVISED THAT HE WAS GOING TO BE ENROUTE TO THE HOSPITAL
AND THAT INMATE PAGE WOULD NEED TO BE TAKEN TO GET CHECKED OUT AS WELL. AT 1400 DEPUTIES
HOLDER AND EDGE REMOVED INMATE PAGE FROM THE RESTRAINT CHAIR AND PLACED HER IN CUFFS AND
LEG IRONS TO BE TRANSPORTED TO CORYELL MEMORIAL HOSPITAL. NO FURTHER.

## III. ACKNOWLEDGMENT

To the best of my knowledge, the information submitted is complete and accurate.

                10/07/2017
    Signature             Date

4

CoryellCty001151

Use of Force Report

UFO # _____

Witness Statement

## I. INCIDENT OCCURRED

a. Use of Force was used on (date) October 7, 2017

b. Location where Use of Force occurred: Separation cell 4    Coryell County Jail

## II. STATEMENT

a, Statement of. Cheryel Pruitt                                    Jailer

          (Name printed)                                              (Rank / Title)

b. Instructions: In as much detail as possible (e.g., time Use of Force occurred; name of each employee and offender involved, if known, etc.), describe what you witnessed:

ON 10-7-17, AT APPROXIMATELY 11:30 AM, CPL LOVELADY WAS PICKING UP LUNCH TRAYS. WHEN HE OPENED THE FOOD SLOT AT SEP 4, INMATE KELLY PAGE THREW SOME LIQUID THRU THE SLOT ON HIM. CPL LOVELADY RADIOED ME, CHERYEL PRUITT IN CONTROL TO OPEN SEPARATION 4, WHICH I DID WITH OFFICER WASHINGTON AND CPL LOVELADYPRESENT. INMATE PAGE WAS STANDING WITH HER BACK TO THE DOOR AND REFUSED TO TURN AROUND, AT WHICH TIME CPL LOVELADY PUSHED HER TO THE WALL AND HAND CUFFED HER. SHE WAS ESCORTED UP THE HALL AND PLACED IN THE RESTRAINT CHAIR.

## III. ACKNOWLEDGMENT

To the best of my knowledge, the information submitted is complete and accurate.

_____                    10-07-17

          Signature                                              Date

4

CoryellCty001152

Use of Force Report
*Offender Participant Statement*

| I. INCIDENT OCCURRED |
| --- |

A. Use of Force was used on (date/time): _11:30 am 5-4_

B. Location where Use of Force occurred: _5-4_

| II. STATEMENT |
| --- |

**Instructions**
* Complete Sections a. through c., checking and completing all that apply in each section;
* Then at Section d., In as much detail as possible, describe what happened before, during and after the incident occurred, including:
  - Time (or approximate time) of incident
  - Name and rank/title of each employee involved; and

a. Statement of offender (Name printed): _Kelli LaPage_

b. Where did the use of force occur? *(Give specific location for each one checked)*

☒ Cell _5-4_
☒ Dayroom: Cell _54_
☒ Dayroom: Dorm
☒ Dorm
☒ Hallways _Booking Hallway_
☐ Infirmary
☐ Kitchen

☐ Runs
☐ School
☒ Showers
☒ Staff Office
☐ Work Area
☐ Yard
☐ Other

c. In describing offender behavior, specify which offender(s) and whether it occurred before or during the use of force incident

Before During

☐ ☐ Assaulted Officer(s) with weapon
☐ ☐ Attempted to assault Officer with weapon
☐ ☐ Attempted Escape
☐ ☐ Attempted to kick Officer(s)
☒ ☒ Displayed abnormal behavior
☒ ☐ Fought with other offender
☐ ☐ Kicked Officer(s)
☐ ☐ Physically threatened Officer(s)

Before During

☐ ☐ Refused to obey written/verbal orders
☐ ☐ Refused to perform proper hygienic care
☐ ☐ Refused to take medication
☐ ☐ Shoved, pushed and /or grabbed Officer(s)
☐ ☐ Struck Officer(s)
☐ ☐ Swore at Officer
☐ ☐ Verbally threatened Officer(s)
☐ ☐ Other *(Specify):_ in booking area 5-4_

d. Describe the Officer's and/or employee's actions (provide names and rank/title, if known): _cornered_

☒ Shoved or pushed me _Against the wall LaPage_

☐ Used restraining holds or device(s) on me
If so what type _____

☒ Struck me with fist or open hand _against a cylinder The back of my head_
If so, how many times? _____ What part of your body was struck? _____

☐ Kicked me _____
If so, how many times? _____ What part of your body was struck? _____

☐ Used Riot Baton on me _____
If so, how many times? _____ What part of your body was struck? _____

☒ Used Chemical Agents on me _Pepper spray_ No

CoryellCty001153

# Use of Force Report
## Continuation Page

Written Statement:

on or About 10-7-17 11:30 am

*[illegible handwriting - scribbled text]*

Angela Muff
is
a Snitch

Attach Continuation page(s), if needed

## III. ACKNOWLEDGEMENT

Bitch

To the best of my knowledge, the information submitted in this participant statement is complete and Accurate.

_____
Name *(print full name)*

_____
Signature

_____
Date

6

CoryellCty001154

# ATTACHMENT 5

# JAIL POLICY

# CORYELL COUNTY SHERIFF OFFICE

# CELL EXTRATION

# SECTION 1

I.      Purpose: It is the purpose of this Jail to provide specific guidelines for the deployment of a response team to meet cell extraction contingencies which may arise within the facilities.

A.      To safely extract offenders from cells who refuse to be moved or to follow proper security procedures.

B.      To establish a technique which minimizes injury to offender(s) and Jail staff, and is consistent with the need to accomplish the cell extraction.

II.     Policy:

A.      This Office will maintain a well-trained cell extraction team in order to remove offenders from their cells when their behavior poses a threat to the smooth operation of the jail or themselves.

B.      The Sheriff is responsible for the assignment, training, and readiness of the Jail's Cell extraction team.

C.      Cell extractions will be executed by trained teams ONLY. Any other staff, alone or in groups, will NOT attempt cell extractions, except in emergency situations, and then only to prevent imminent serious injury or death.

III.    Definitions:

A.      Multiple extraction, 2 or more inmates to be extracted from a cell.

# ATTACHMENT 6

Division Order: 025-JOC
Date: 9/6/05

**Inmate Management Procedures**

A.     Whenever inmates in separation status become increasing aggressive towards staff
       by cursing and threatening them, proactive steps should be taken to prevent the
       inmates from acting on that aggression.
       Whenever the inmate curses or threatens staff the highest ranking shift supervisor
       may, at their discretion, order a cell search to ensure that the inmate does not
       possess a weapon or contraband that could be used to kill, maim or injure staff or
       someone else. The shift supervisor should ensure sufficient staff is assembled to
       conduct the search. The inmate should be searched and removed to a holding area
       prior to searching the cell. At the conclusion of the search the inmate should be
       returned to their cell.
       A disciplinary report describing the  rule violation and a cell search form shall be
       filed.
       Should the inmate refuse, the shift supervisor shall give them no less than two
       direct orders clearly describing the order and the consequences of failure to
       obey. If the inmate continues to refuse, refer to the use of force plan.

B.     Whenever an inmate begins banging on their cell fixtures or other items, the
       highest ranking shift supervisor should order a cell search to ensure that the inmate
       is not destroying county property. The shift supervisor should ensure sufficient
       staff is assembled to conduct the search. The inmate should be searched and
       removed to a holding area prior to searching the cell. At the conclusion of the
       search the inmate should be returned to their cell.
       A disciplinary report describing the rule violation and a cell search form shall be
       filed.
       Should the inmate refuse, the shift supervisor shall give the inmate no less than two
       direct orders clearly describing the order and the consequences of failure to obey.
       If the inmate continues to refuse refer to the use of force plan.

C.     Should an inmate have a high propensity for weapons, dangerous contraband
       possession or destructive behavior the Jail Administrator or Sergeant may order
       cell searches once an hour or any other regular scheduled basis. Only in an
       emergency where the Jail Administrator or Sergeant cannot be contacted may the
       highest ranking shift supervisor authorize this procedure, but must contact the Jail

Administrator or Sergeant as soon as possible.

A detailed report and a cell search form shall be filed.

Should an inmate refuse, the shift supervisor shall give the inmate no less than two direct orders clearly describing the order and the consequences for failure to obey. If the inmate continues to refuse to obey, refer to the use of force plan.

D.  Should an inmate attempt to flood or flood their cell the water shall be turned off to that area or cell. It shall only be turned on every two hours for five minutes so the inmate may flush their commode, or other personal use. At the conclusion of the five minutes the water shall be turned off.

This status shall be reviewed every 24 hours by the Jail Administrator, Sergeant or in their absence the highest ranking 1st shift supervisor. This review shall be documented.

A disciplinary report shall be filed.

E.  Whenever an inmate aggressively bangs or kicks the cell door it can be knocked out of line and when the door is out of line the locking mechanism will fail allowing the inmate to exit his cell. Whenever an inmate exhibits this behavior the highest ranking shift supervisor shall give the inmate no less than two direct orders to quit the behavior and the consequences of failure to obey.

Should the inmate refuse to obey, refer to the use of force plan.

CoryellCty000735

# EXHIBIT B

| | | |
|---|---|---|
| JOHN FAIRCHILD and SUSIE FAIRCHILD, individually, and as Independent Administrators of, and on behalf of the ESTATE OF KELLI LEANNE PAGE and the heirs-at-law of KELLI LEANNE PAGE, | § § § § § § § | NO. 6:19-CV-29 |
| Plaintiffs, | § | |
| v. | § § | |
| CORYELL COUNTY, TEXAS; STEVEN RUSSELL LOVELADY; and WESLEY HARLAND PELFREY, | § § § § | |
| Defendants. | § § | |

## AFFIDAVIT OF SHERIFF SCOTT A. WILLIAMS

BEFORE ME, the undersigned authority, on this day personally appeared Scott A. Williams who is personally known to me, and who, being first duly sworn, stated as follows:

1.     "My name is Scott A. Williams, I am at least eighteen (18) years of age, I have never been convicted of a felony, and I am competent to testify to the facts contained in this Affidavit. The facts contained in this Affidavit are, to my personal knowledge, true and correct.

2.     I am the Sheriff of Coryell County. In this capacity, I am a custodian of records for the Coryell County Sheriff's Office, and am familiar with the manner in which its records are created and maintained by virtue of my duties and responsibilities.

3.     Enclosed with this Affidavit is a thumb drive that contains a video of the October 8, 2017 incident, which is a copy of business records of the Coryell County Sheriff's Office.

4.     These records were made at or near the time of each act, event, condition,

opinion, or diagnosis set forth, and it is the regular practice of the Coryell County Sheriff's Office to make these types of records.

5.      These records were made by, or from information transmitted by, persons with personal knowledge of the matters set forth.

6.      The records were kept in the course of regularly conducted business activity, and it is the regular practice of the Coryell County Sheriff's Office to keep these types of records in the course of regularly conducted business activity.

7.      It is the regular practice of the business activity to make these records."

Further, Affiant sayeth not.

Scott A. Williams

010-8829-6224/1/AMERICAS

SWORN TO AND SUBSCRIBED before me by Scott A. Williams, on this 5th day of _Septembe_ 2019, to certify which witness my hand and seal of office.



_Gay a Mc Carty_
Notary Public in and for the State of Texas

My commission expires: 10/05/2021

010-8829-6224/1/AMERICAS

MSJ
Exhibit B

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JOHN FAIRCHILD and SUSIE FAIRCHILD, individually, and as Independent Administrators of, and on behalf of, the ESTATE OF KELLI LEANNE PAGE and the heirs-at-law of KELLI LEANNE PAGE, | § § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No. 6:19-cv-29 |
| CORYELL COUNTY, TEXAS; STEVEN RUSSELL LOVELADY, and WESLEY HARLAND PELREY, | § § § § | |
| *Defendants*. | § | |

## <u>AFFIDAVIT OF STEVEN RUSSELL LOVELADY</u>

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | KNOW ALL BY THESE PRESENTS: |
| COUNTY OF CORYELL | § | |

BEFORE ME, the undersigned authority, on this date appeared an individual identified to me as Steven Russell Lovelady, who upon his oath states and affirms as follows:

"My name is Steven Russell Lovelady. I am over the age of 18 years, of sound mind, and otherwise competent to make this Declaration. I declare under penalty of perjury that the foregoing is true and correct.

I am currently employed with the Gatesville Independent School District. Prior to my employment with the School District, I worked for the Coryell County Sheriff's Office for approximately fourteen years as a correctional officer within the Coryell County Jail. I held the position of Corporal at the Sheriff's Office for approximately twelve years and resigned in December 2017. I served at the pleasure of the Coryell County Sheriff, Scott Williams. I was not

a policy maker for the County, and I deferred to the authority of the County Sheriff in the formulation of policies.

In June 2017, I changed positions within the Sheriff's Office from a shift corporal to book-in corporal. This position consisted of hours from 8:00 a.m. to 5:00 p.m., Monday through Friday. On October 6, 2017, the jail lieutenant requested that I serve as a shift corporal again due to an absence in the shift corporal position. This was not a permanent reassignment but only to fill-in for the position due to a vacancy.

On October 7, 2017, a Saturday, I served as the shift corporal for the first shift at the jail which begins at 7:00 a.m. and ends at 7:00 p.m. During the first shift, there were three other correctional officers on duty. Following the lunch hour, I was picking up food trays within the jail facility. I began the process of gathering the food trays by starting in the separation area of the jail. Kelli Page was an inmate that was housed in the separation area in cell number S-4. I opened the food slot on the separation cell door and Page handed the food tray to me. I placed the food tray on the food cart. As I turned to close the food slot, Page squirted an unknown liquid substance all over the left side of my body including my face. I retrieved the chemical agent from my utility belt and sprayed Page with the chemical agent in short bursts. The application of chemical agents was in response to Page throwing the unknown substance on me, not obeying orders and to move Page away from the food slot. I then ordered Page multiple times to turn around and be handcuffed. Page refused the orders to be handcuffed.

When working with inmates in the separation area, the Sheriff's Office requires that two officers are present when opening the doors to separation cells. A sign on the cell door states the following "ATTENTION; SHALL BE 2 OFFICERS PRESENT WHEN OPENING SEPARATION DOORS SHALL BE 2 OFFICERS TO ESCOT INMATE TO AND FROM ANY

ACTIVITY." *See* Attachment A. Along with Officer Washington, I requested that the control room operator open the door to Page's cell. After the door was opened, Page was placed against the wall and handcuffed. Officer Washington escorted Page to the Book-In area and placed her in a restraint chair. I contacted my supervisors and advised them of the incident. It was my understanding that the nurse advised that Page would need to go the hospital. I was also instructed to go to the hospital to get examined due to the unknown liquid substance. I went separately to the hospital and was released to return to work. I had no other interaction with Page that afternoon; however, it was my understanding that Page returned to the jail and was housed in a separation cell.

The following day, October 8th, I served as the shift corporal again. During that shift, there were only two other officers at the Coryell County jail, Officer Pelfrey and the control room operator. Early into the shift, Page began banging on the door with some object. I went to her cell and spoke with her concerning the banging. I ordered her to stop banging on the door. As the shift continued, I was aware that Page continued to bang on the door and Officer Pelfrey went to speak with her.

After Officer Pelfrey's discussion with Page, Page continued to bang on the door. Officer Pelfrey and I went back to Page's cell with a restraint chair. Since Page continued to disobey orders, I did not want Page to disrupt the institution with the persistent banging, damage the door or harm herself. Officer Pelfrey and I arrived at her cell door and I gave multiple orders for Page to turn around and be placed in handcuffs. The food slot was open on the cell door for Page to allow us to place the handcuffs on her. Page failed to comply with multiple orders and backed away from the door. I sprayed Page with small bursts of a chemical agent to gain compliance.

Page turned and walked to the sink area of her cell as I continued to give orders for her to return to the food slot to be handcuffed.

After her failure to comply with my orders, I closed the food slot and placed the chemical spray on my utility belt. I contacted the control officer and requested that the cell door be opened. I removed my handcuffs and we entered the cell. I continued to give Page the order to place her hands behind her back and she did not comply. I sprayed her with chemical agents in small bursts, approximately three times. I handed the chemical spray to Officer Pelfrey at the cell door. She continued to refuse to obey while using profanity towards us. Page grabbed onto the sink and placed a sheet over her head. I attempted to turn her around and she suddenly let go of the sink. The motion of turning her around and her prior resistance while holding onto the sink caused her to fall to the floor.

While on the floor, she continued to curse at us and was able to grab onto my handcuffs. I was able to get the hair brush away from her; however, she gained control of the handcuffs and laid on top of them. I continued to instruct her to let go of the handcuffs as I was concerned the handcuffs could be used as a weapon. She continued to curse and refused to obey. I applied two knee strikes in order to access the handcuffs. I attempted to roll her over to gain access to her hands and the handcuffs. We were unable to roll her over because she continued to resist and bite at us. At this time, I determined that I should contact the control officer to advise of the situation. While contacting control, Page bit my right hand very hard and drew blood.

As I continued to give her orders, Officer Pelfrey was able to gain some control of Page and have her rolled onto her back. Page continued to struggle with us and kicked me in my groin area pushing me away from her towards the wall while I attempted to strike her. I was then able to grab the handcuffs and her arm. She continued to resist and fight with us while I attempted to

place the handcuffs on her arm. Page attempted to bite Officer Pelfrey. I was finally able to place her in handcuffs while she continued to refuse orders. Throughout the struggle to gain control of the handcuffs, Page continued to resist and use profanity towards us. I did not have my weight on her body.

After handcuffing her, we rolled Page over and realized that she was not responding. I continued to call her name and shake her chest. I called for assistance and we removed the handcuffs. I began CPR and continued until relieved by a deputy sheriff. Later that day, I had to go the hospital due to the bite from Page.

All matters stated herein are true and correct to my personal knowledge.



Steven Russell Lovelady

SUBSCRIBED AND SWORN TO before me on this the 5th day of September, 2019, by the said Steven Russell Lovelady.

Notary Public, State of Texas

ASHLEY L. HOLLAND
Notary Public, State of Texas
Comm. Expires 01-12-2022
Notary ID 131408664

# ATTACHMENT A



TELEPHONE PIN #

Your pin number for the telephone is
your SO number which is on your bank.
If you have issues, contact the supervisor
on duty. PIN numbers are effective as of
7-1-2016.

**ATTENTION**

SHALL BE 2 OFFICERS
PRESENT WHEN OPENING
SEPERATION DOORS.

SHALL BE 2 OFFICERS TO
ESCORT INMATE TO AND
FROM ANY ACTIVITY.

CoryellCty000486

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| JOHN FAIRCHILD and SUSIE FAIRCHILD, individually, and as Independent Administrators of, and on behalf of the ESTATE OF KELLI LEANNE PAGE and the heirs-at-law of KELLI LEANNE PAGE,<br><br>     Plaintiffs,<br><br>v.<br><br>CORYELL COUNTY, TEXAS; STEVEN RUSSELL LOVELADY; and WESLEY HARLAND PELFREY,<br><br>     Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§     NO. 6:19-CV-29 |

## DECLARATION OF DESMOND DENTS

I, Desmond Dents, declare under penalty of perjury that the following statements are true and correct to the best of my knowledge, information, and belief:

1.  I am over eighteen (18) years of age, am competent to make this Declaration, and have personal knowledge of the facts below. I would testify truthfully to the facts set forth herein if called upon to do so.

2.  I was in the jail hallway on Sunday morning, October 8, 2017. Attached is a true copy of a sworn statement I gave to the Texas Rangers on October 12, 2017.

3.  No one has promised me anything in connection with my original statement or this declaration.

4.  I declare under penalty of perjury that the foregoing is true and correct.

Executed on August _29_, 2019.

_Desmond Dents_
Desmond Dents

Texas Department of Public Safety

## Voluntary Statement

THE STATE OF TEXAS

COUNTY OF Coryell

Before me, the undersigned authority in and for said County and State, on this the 12th day

of October, AD 2017, personally appeared Desmond Dents who, after being by me duly sworn,

deposes and says:

"Kelly Page" was being vey loud Sunday morning. I believe she was using a small tea cup, to
bang against the door, it was very "Nerve Racking". Mr. Lovelady talked, with "Kelly on several
occasion's that morning! No sooner as he would come back to the front she would begin
banging again, he talked with her very passive on all the occasions. But it juest seemed like she
was on a mission for something but, I have no clue. What it sounded like she was yelling for
commissary. That's all I remember hearing she was very persistent.

DOB: 8-30-73

_Desmond Dents_
Signature

Subscribed and sworn to before me, the undersigned authority, on this the 12th day of October,
AD 2017.

Peace Officer
Texas Ranger

CID-13 (Rev. 08/2015)

CoryellCty000009

Blank

CoryellCty000010

# EXHIBIT E

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| JOHN FAIRCHILD and SUSIE FAIRCHILD, individually, and as Independent Administrators of, and on behalf of, the ESTATE OF KELLI LEANNE PAGE and the heirs-at-law of KELLI LEANNE PAGE, | § § § § § § § § | |
| *Plaintiffs,* | § § § | CASE NO. 6:19-CV-00029-ADA-JCM |
| v. | § § § | |
| CORYELL COUNTY, TEXAS; STEVEN RUSSELL LOVELADY; and WESLEY HARLAND PELFREY, | § § § § § | |
| *Defendants.* | § § | |

## <u>AFFIDAVIT OF WILLIAM RAY JENNINGS, JR.</u>

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

BEFORE ME, the undersigned notary public, personally appeared William Ray Jennings, Jr., who being duly sworn upon his oath did depose and state as follows:

1.  "My name is William Ray Jennings, Jr. I am over the age of 21 and am fully competent to make this affidavit. I have never been convicted of a felony. The facts stated herein are within my personal knowledge and are true and correct.

2.  I graduated from the East Texas Police Academy in 2003 and from Jail Management Operations in 2010. I graduated from the National Jail Leadership Command in 2013. I am a graduate of Jail Management Operations (Correctional Management Institute of Texas) and the National Jail Leadership Command Academy Class (American Jail Association). Additionally,

I have earned 42 hours of college credit from Texas Baptist College. I am also a Member of the American Jail Association, the Texas Jail Association, the Sheriff's Association of Texas, and the East Texas Peace Officer's Association. Additionally, I served on the Board of Directors for the Texas Jail Association from 2012 – 2013, and was elected again to the Board of Directors in 2018 and will serve until 2021.

3.     I have over seventeen (17) years of law enforcement experience and hold the following certifications: Master Jailer, Master Peace Officer, Certified Jail Manager (American Jail Association), and Jail Administrator.  I have been a licensed jailer in the State of Texas for seventeen (17) years and a licensed peace officer in the State of Texas for sixteen (16) years, licensed by the Texas Commission on Law Enforcement ("TCOLE"). I have over 2,690 hours of training through TCOLE.  I have extensive experience and training; specifically, use of force, inmate restraint and high risk transport.

4.     I am and have been a Major with the Comal County Sheriff's Office since June 8, 2018.  In that capacity, my responsibilities include overseeing all jail operations.

5.     Prior to my employment with Comal County, I served as a Lieutenant with the Gregg County Sheriff's Office.  In that position, I supervised the intake of all inmates coming into the Gregg County Jail, which averaged approximately 10,500 every year.  For two years, I served as the Compliance/Life Safety Lieutenant and, for seven years, I also served as the Facility Administrator for the Gregg County Jail, which was a maximum security facility housing 196 inmates.  Additionally, I served as the Restraint/Transport Instructor and the Restraint Chair Instructor.  In my capacity with the Gregg County Sheriff's Office, it was my responsibility to ensure that the facility and all related staff exceeded the standards set by the Texas Commission on Jail Standards ("TCJS").

6.     I have reviewed documents relevant to the incident which forms the basis of this lawsuit, as well as the incident which occurred between Corrections Officer Steven Lovelady ("Officer Lovelady") and inmate Kelli Leanne Page ("Inmate Page") on October 7, 2017. The documents I have reviewed include, but are not limited to the following: Ranger Report (CoryellCty382-397), photographs from October 7th incident (CoryellCty427-438), photographs from October 8th incident (CoryellCty439-465), Officer Lovelady Statement (CoryellCty180-181), Corrections Officer Wesley Pelfrey ("Officer Pelfrey") (CoryellCty378-379), Desmond Dents (inmate) Statement (CoryellCty9-10), Use of Force Report from October 7th incident (CoryellCty1149-1154). I have also reviewed video from the October 7, 2017 and October 8, 2018, incidents. The opinions expressed herein are based on my training, knowledge and experience.

7.     With regard to staffing requirements, TCJS requires one corrections officer for every 48 inmates.  Additionally, TCJS requires other essential personnel also be present. For a one-story jail facility, TCJS requires a control officer and one supervisory corrections officer for every 48 inmates.  For the incident in question, as long as there were no more than 96 inmates in the Coryell County Jail on the day of the incident, the Coryell County Sheriff's Office met TCJS staffing requirements based on the fact that they had two officers, one of which was a supervisor, and one person in the control room.

**Safety and Security of the Jail**

8.     The primary duty of corrections officers is to maintain the safety and security of the inmates, jail staff, and the jail while complying with all mandates put forth by TCJS. On the morning of the incident which forms the basis of this lawsuit, Inmate Page was exhibiting disruptive behavior by hitting the door/window of her jail cell with a plastic hair brush and kicking the door.  That behavior is disruptive for several reasons.  That type of noise can distract officers

from other activities which might be occurring in the jail or could result in officers being unable to hear another problem occurring in the jail. Additionally, it is common for inmates to create disturbances such as this to mask the noise of another, more serious distraction being planned and carried out at the same time. For example, the sound could mask cries for help, an assault or even an attempted escape.

9.     Further, an inmate hitting the door/window of the cell with a plastic hairbrush is also a problem because it could very likely lead to the inmate's injury or the destruction of property. Finally, behavior like this can disrupt the facility by annoying other inmates and/or cause them to act out. For example, it apparently annoyed Desmond Dent, another inmate in the same housing area. If Inmate Page's disruptive behavior had been allowed to continue, the agitation to other inmates might have caused other inmates to act out.

## Use of Force Continuum

10.     When an inmate is being disruptive, the responding officers process through what the industry refers to as a use of force continuum which dictates the steps the officers take in order to gain compliance with a disruptive inmate. The steps within the use of force continuum proceed as follows: (1) presence; (2) verbal commands; (3) soft hands; (4) hard hands; (5) restraints/less lethal impact weapons; and (6) deadly force.

11.     If compliance is not secured at any particular step in the continuum, officer efforts escalate to the next level. Once compliance is secured, the use of force should cease.

12.     Because Inmate Page was housed in administrative segregation at the time of the incident, the space with which to respond to her disruption was limited. Additionally, because Inmate Page's behavior, prior to the officers' entry into the cell was disruptive but non-aggressive, it was sufficient to respond to such behavior with two officers.

## Officers' Preliminary Efforts

13.     In response to Inmate Page's behavior, Officers Lovelady and Pelfrey went to her cell door. Their presence did not gain Inmate Page's compliance. I understand that Officer Lovelady gave verbal directives to Inmate Page to cease. Once Inmate Page failed to comply with Officer Lovelady's directives, the next step in the continuum would be to proceed to "soft hands." Soft hands is used to guide an offender to a particular action. Because the cell door was between Officer Lovelady and Inmate Page, soft hands was not an option. It appears that Inmate Page refused to comply with Officer Lovelady's directives to move back from the cell door; thus, he deployed pepper spray to gain compliance by spraying it through the food service slot. This was not effective to gain compliance.

## Entry Into the Cell

14.     Once an officer begins the use of force continuum, the officer should continue until compliance is gained. Here it was necessary to enter the cell. When the officers entered, Inmate Page failed to comply with the officers' directives and, instead, turned and walked to the back of the cell in an effort to shield her face from further pepper spray. In order to gain compliance, Officer Lovelady again deployed the pepper spray and Inmate Page again resisted by turning away and using the blanket to protect her face. Inmate Page's continued non-compliance justified an immediate escalation to hard hand tactics. However, instead, Officer Lovelady attempted to de-escalate the situation by using soft hands to take Inmate Page's right hand and attempt to apply hand restraints. However, again, Inmate Page resisted.

## Escalation of Force

15.     Inmate Page's resistance to Officer Lovelady's soft hands attempt to apply hand restraints appears to have caused Inmate Page to fall to the ground. Officer Lovelady had to

continue his attempted application of handcuffs.

16.     As the struggle continued, Inmate Page gained possession of Officer Lovelady's handcuffs. Hand restraints can be used as a weapon, up to and including serious bodily injury and deadly force. Hand restraints are typically made out of steel and have jagged teeth as part of the locking mechanism. They can be used as a club or, when they are open, as they were in this incident, they can be used as a hook to gouge people in their mouth, nose, eye, or throat.

17.     Because of the danger, the officers were forced to continue the application of force to regain control of the hand restraints to prevent themselves or Inmate Page from being injured. During this process, Inmate Page was assaulting the officers by biting them and kicking them in the groin which forced the officers to escalate the use of force.

18.     During the struggle, Inmate Page became non-resistant and the officers' use of force immediately stopped. Once the officers realized the resistance had ceased due to Inmate Page not breathing, they immediately began life saving measures to prevent further harm to Inmate Page and they maintained those life saving measures until paramedics arrived and took over.

19.     The judgments and actions taken by the officers were reasonable, required discretion for personal deliberation, decision, and judgment by the officers and the actions of the officers were justified based on the circumstances."

Further Affiant sayeth not.



_____
William Ray Jennings, Jr.

SUBSCRIBED AND SWORN TO BEFORE ME on this the 6 day of September, 2019, to certify which witness my hand and official seal.

ALICE MAGDALENA SNYDER
Notary Public, State of Texas
Comm. Expires 01-20-2021
Notary ID 13097240-1

_____
Notary Public, State of Texas