IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JOHN FAIRCHILD and SUSIE FAIRCHILD, individually, and as Independent Administrators of, and on behalf of the ESTATE OF KELLI LEANNE PAGE and the heirs-at-law of KELLI LEANNE PAGE, | § § § § § § § | NO. 6:19-CV-29 |
| Plaintiffs, | § § | |
| v. | § § | |
| CORYELL COUNTY, TEXAS; STEVEN RUSSELL LOVELADY; and WESLEY HARLAND PELFREY, | § § § § § | |
| Defendants. | § | |

## DEFENDANT WESLEY PELFREY'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY

COMES NOW, Defendant Wesley Pelfrey (the "Defendant" or "Pelfrey"), and files his Reply in Support of his Motion for Summary Judgment Based on Qualified Immunity in the above-styled and numbered cause, and states as follows:

## I.    INTRODUCTION

Plaintiffs claim in their Response to Pelfrey's Motion for Summary Judgment that the "clearly established law" governing excessive force provides a basis for Pelfrey's liability. This reasoning falls far short of satisfying their burden and Pelfrey is, indeed, entitled to summary judgment.

## II.    ARGUMENT AND AUTHORITIES

Plaintiffs' Response to Pelfrey's Motion for Summary Judgment boils down to two arguments: (1) the contemporaneous jail video raises a genuine fact dispute about whether Pelfrey applied pressure to Page while she was subdued; and (2) Pelfrey is liable as a bystander officer for

the excessive force allegedly committed by Lovelady. (Doc. 20-22). Neither of these overcome Pelfrey's qualified immunity:

*First*, the video is not dispositive of Pelfrey's immunity because it does not refute his testimony about his handling of Page in her cell.

*Second*, Plaintiffs' sole reliance on the video ignores the wealth of other, undisputed evidence demonstrating the circumstances faced by Pelfrey, both prior to and during the encounter with Page, which justify his use of minimal force, if any.

*Third*, Pelfrey does not have bystander liability (nor direct liability) because nothing he did violates the clearly established law governing excessive force claims at the time of the incident. Accordingly, his Motion for Summary Judgment should be granted.

**A.      Pelfrey Did Not Use Excessive Force in Violation of Clearly Established Law**

1.      <u>The jail video does not deprive Pelfrey of qualified immunity.</u>

The jail video, which captures *some* of the Defendants' interactions with Page, is a key part of Pelfrey's Motion for Summary Judgment. But, it is not the entire motion. In his deposition, Pelfrey added context to the video and explained what he did to assist Lovelady in getting Page handcuffed while inside her cell. Plaintiffs argue that the video, and Page's autopsy, contradict Pelfrey's testimony that he never applied any weight to Page's back or neck while she was on the ground. (Response at p. 20-21). The Court, however, can review the video and see that it does nothing to disprove Pelfrey's testimony. Pelfrey explained that while the video may appear to show him with his knee or elbow on Page's back, he was not putting any weight on Page at all. (Doc. 41-1, Pelfrey Depo. 40:20-25 – 41:1; 46:2-9; 47:6-11). Pelfrey described how he was only trying to keep Page from getting away from him and to get control of her arm so they could handcuff her. (Doc. 41-1, Pelfrey Depo., p. 45: 13-25; 46:1-9).

Moreover, Page's autopsy does not bolster Plaintiffs' assertion that Pelfrey used any force to subdue Page. The "findings" described in the autopsy are clearly based on the "reported history and/or video evidence." *See* Doc. 41-1 at 12. Pelfrey's testimony, coupled with the video evidence, demonstrate that the force he used to assist Lovelady was not excessive, unreasonable, or disproportionate to the need based on the circumstances they faced. There simply was no Fourth Amendment violation based on the use of excessive force.

2. <u>Pelfrey's use of force, if any, did not violate clearly established law based on the circumstances he confronted.</u>

Plaintiffs devote a large portion of their response to discussing standards governing excessive force claims, including citations to non-binding authority outside the Fifth Circuit, that are inapposite here. For instance, Plaintiffs assert that Page suffered from mental illness, and that Defendants should have taken that into account and used de-escalation techniques. (Doc. 41 at 5-6). Pelfrey, however, testified that *he was not aware of any mental health issues involving Page* prior to October 8, the date of the incident. (Doc. 41-1, Pelfrey Depo. 32:119-22). Moreover, Plaintiffs point to no evidence known to Pelfrey that showed Page had some mental defect.

Similarly, Plaintiffs argue that quickly resorting to force in the face of passive resistance is objectively unreasonable under clearly established law (Response at 13-15). Again, however, this ignores undisputed evidence in the record of events and circumstances that Pelfrey faced leading up to the encounter with Page, which are relevant to determine whether he used excessive force in violation of clearly established law. More specifically, *Pelfrey knew that Page had been violent and uncooperative the previous day*, including assaulting Lovelady. (Doc. 41-1, Pelfrey Depo. 29: 12-19; *see also* County Records (Incident Report), *Exhibit C*, at Attachment 4). Equally important, on the morning of October 8, *Pelfrey attempted to de-escalate tensions with Page by spending some ten (10) minutes talking to her to calm her down prior to entering the cell*. (Doc.

010-8864-2049/3/AMERICAS

41-1, Pelfrey Depo. 34:2-15; 35:19-25 – 36:1).  These efforts were unsuccessful, as Page cursed him and told Pelfrey in the moments before they entered her cell that she would stab him in the eye and put him in the restraint chair. Pelfrey Aff., *Exhibit A,* ¶ 6; (Doc. 41-1, Pelfrey Depo., p. 34:8).  Indeed, Plaintiffs concede that Page had no intention to cooperate, even before the Defendants took any measures to obtain her compliance.  (Doc. 41 at 9) ("Moreover, Defendants knew, from the altercation the previous day, and her conduct and verbal comments immediately prior to being sprayed with OC, that she would not voluntarily submit to being removed from the cell to again be confined to a restraint chair.")[1]

Once Defendants entered Page's cell, she continued refusing their commands.  *Id.*, ¶¶ 6-7. Page also grabbed and held Lovelady's handcuffs and used them to prevent her restraint. Pelfrey Aff., *Exhibit A,* ¶ 7.  She fought with, kicked, and bit Lovelady. *Id.*  The video is clear on this: Pelfrey did not initially approach Page (Video, *Exhibit D*), and he did not cause or contribute to Page going to the floor of the cell (Video, *Exhibit D*). Once on the ground, Pelfrey did not put his body on Page at all—much less in a manner that would impede her breathing (Pelfrey Aff., *Exhibit A*, ¶7), (Video, *Exhibit D*). Pelfrey's sole action was his attempt to pull Page's arm out from under her body to get Lovelady's handcuffs from her and get her under control. During much of this time, he had his left hand on the built-in jail shelf to steady himself.  (Video, Ex. D).

Hence, unlike the situation in *Trammel v. Fruge* on which Plaintiffs rely, this was not a scenario involving immediate use of force after merely passive resistance by a non-violent individual.  Despite Pelfrey's attempt to de-escalate the situation with Page in their 10-minute

---

[1] As noted in the Motion for Summary Judgment, Page's removal from her cell was not an "extraction" within the meaning of the Jail Policy Manual.  At his deposition, Pelfrey clearly distinguished between an "extraction," for example when inmates are fighting in a cell, and this incident as a "removal" or "separation" which could be accomplished by two officers.  (Doc. 41-1, Pelfrey Depo. 16:5-12).

conversation before centering her cell, she threatened to stab him in the eye, cursed him and

Lovelady, and continued to refuse to cooperate. (Doc. 41-1, Pelfrey Depo., p. 35:21-22). Yet, even

if one could question whether the force applied by each Defendant was excessive, the qualified

immunity standard protects an officer, such as Pelfrey, who may act with a mistaken, yet

reasonable, understanding of the law from the "hazy border between excessive and acceptable

force." *See Manis* at 846 (quoting *Brosseau*, 543 U.S. at 201) (other citations omitted). Indeed, as

late as 2018, after the decision in *Trammel*, the Fifth Circuit reinforced the notion that one who

merely refuses an officer's command to turn around and be handcuffed, and instead backs away

from the officer, is actively—rather than passively—resisting *and* poses an immediate threat,

which justifies enough force for a "take down:"

> The Officers were justified in the "take down" because they had reason to believe
> Cadena posed a threat to their safety and resisted arrest. In *Poole v. City of
> Shreveport*, we held that a suspect who "refus[ed] to turn around and be handcuffed
> … posed an 'immediate threat.' [citation omitted] Here, when ordered to place his
> hands behind his back, Cadena instead backed away from Officer Rodriguez.
> Cadena also 'actively tr[ied] to resist arrest.' [citation omitted] When the suspect in
> *Poole* 'backed away from the [arresting] officers,' we said he had 'actively
> resist[ed]' arrest. [citation omitted] Cadena backed away from Officer Rodriguez,
> after being ordered to put his hands behind his back.

*See Cadena v. Ray*, 728 Fed. App'x 293, 296 (5th Cir. 2018) (citing and quoting *Poole v.

City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012) (quoting *Deville v. Marcantel*, 567

F.3d 156, 167 (5th Cir. 2009).

As noted in the Motion for Summary Judgment, the "dispositive question is 'whether the

violative nature of *particular* conduct is clearly established,' thus putting the constitutional

question 'beyond debate.'" *Mullenix v. Luna*, 136 S.Ct. 305, 308, 312 (2015) (quoting *Ashcroft v.

al-Kidd*, 563 U.S. 731, 741 (2011)), *and see discussion in Cole v. Carson,* 915 F.3d 378 (5th Cir.

Aug. 20, 2019, slip op. at 13-14) (en banc); *Morrow*, 917 F.3d at 875 (slip op. at 6); *Hill v. Carrol*

*County, Miss.*, 587 F.3d 230, 237 (5ᵗʰ Cir. 2009) (restraint case). Here, the appropriate inquiry is whether preexisting law clearly established Page's right to be free from Officer Pelfrey's minimal use of force when, by Fifth Circuit standards, she actively resisted and posed an immediate threat, after Pefrey's failed attempt to de-escalate the tension. The answer is clearly "no." *See Cadena*, 728 Fed. App'x at 296 (force was not excessive when officers spoke calmly to Cadena for several minutes before resorting to use of force). What case or cases placed it "beyond debate" in October 2017 that Pelfrey could use no force to help wrestle Lovelady's handcuffs away from Page and get her arm from underneath her body to get her under control? Plaintiffs have cited none.

Pelfrey's minimal use of force was not only reasonable for his own safety and the safety of others, it was authorized under well-settled controlling law. Hence, he did not commit excessive force, nor were his actions unreasonable under clearly established law.

**B.      Pelfrey is Not Liable Under a Bystander Liability Theory**

Plaintiffs also argue the Pelfrey is liable for Defendant Lovelady's alleged unconstitutional use of excessive force under a bystander liability theory. (Response at 21-22). The Fifth Circuit recognizes bystander liability under Section 1983 in excessive force cases when the bystander officer "had a reasonable opportunity to realize the excessive nature of the force and to intervene to stop it." *Deshotels v. Marshall*, 454 F. App'x 262, 268 (5th Cir. 2011) (quoting *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)). However, like other aspects of an excessive force claim, a bystander officer is entitled to qualified immunity when his conduct does not violate clearly established law. *See id.* The "preexisting law must dictate, that is, truly compel (not just suggest or allow or raise question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law *in the circumstances*." *Id.* (quoting *Pasco v. Knoblauch*, 566 F.3d 572, 579-80 (5th Cir. 2009) (emphasis in original). As the Court

explained in *Deshotels*, the inquiry is whether, under the law in effect at the time, Pelfrey "could have reasonably believed that [he was] not required to intervene and prevent [Lovelady's] use of excessive force." *See id.* at 269.

Here, like in *Deshotels*, the answer is clearly "yes," Pelfrey could reasonably believe he should assist Lovelady—not join the inmate in the scuffle against his supervisor! As discussed in detail above, taking into consideration all of circumstances confronted by Pelfrey on the morning of October 8, there is no question he could have reasonably believed that he was not required to intervene to prevent Lovelady's use of force to subdue Page. Notably, like the suspect in *Deshotels*, Page was uncooperative, combative, and continued to resist Defendants by pulling and keeping her arms underneath her body.[2] No reasonable officer in Pelfrey's situation would refuse to assist in the handcuffing Page under those circumstances.

Qualified immunity is, of course, a provocative topic, and some courts have strained for a basis to overcome the law laid down by the Supreme Court. An example of this is a particularly offensive ruling by the Fourth Circuit in a police shooting case. *Harris v. Pittman*, No. 17-7308 (June 18, 2019). There, the police officer survived a fight with a larger assailant who admittedly gained control of the officer's gun and attempted to shoot him in the head. A panel denied summary judgment. In his dissent, the eminent jurist, J. Harvie Wilkinson was incredulous and his description of the facts resonates here:

> The majority shaves this incident oh so fine, parsing and segmenting the encounter almost second by second, ultimately finding that Pittman's efforts to save his life in the final moments of the altercation were excessive. Sadly for the majority, the action here spun by; the struggle allowed the combatants no time for a coffee break. In the majority's view, if a suspect lands a punch in one

---

[2] The Court in *Deshotels* also noted that the plaintiff's bystander liability claim was premised on a fifth officer's use of a taser to subdue the suspect, which allegedly constituted excessive force. This claim against the fifth officer remained pending before the district court. Hence, the bystander officers were entitled to qualified immunity, regardless of whether any constitutional violation occurred.

moment, drags you to the ground the next, and goes for your gun a second later, a reasonable officer must shed any attempt to preserve his own life if, in the course of the ongoing fight, the officer gains so much as a fleeting advantage.

(Slip op. at 31).

In much the same way as Harris, Plaintiffs' bystander argument claims Pelfrey should have taken some action in the heat of battle if Lovelady had gained "so much as a fleeting advantage." That is not the law and Pelfrey is entitled to a judgment.

### III.    CONCLUSION

Defendant Pelfrey is entitled to summary judgment on Plaintiffs' claims based on the doctrines of qualified/official immunity. Plaintiffs cannot establish that Pelfrey utilized excessive force in violation of the Constitution, or that his actions were objectively unreasonable under clearly established law. Therefore, Defendant Pelfrey respectfully requests that this Court grant this Motion for Summary Judgment Based on Qualified Immunity, and for such other relief to which he may be entitled.

Respectfully submitted,

*/s/ S. Cass Weiland*
S. Cass Weiland
Robert A. Hawkins
State Bar No. 00796726
SQUIRE PATTON BOGGS LLP
2000 McKinney Ave., Suite 1700
Dallas, Texas 75201
(214) 758-1500
(214) 758-1550 (fax)
cass.weiland@squirepb.com
robert.hawkins@squirepb.com

ATTORNEYS FOR DEFENDANT
WESLEY PELFREY

## CERTIFICATE OF SERVICE

I certify that on October 21, 2019, a true and correct copy of the foregoing was served on all counsel of record via the Court's ECF system.

*/s/ S. Cass Weiland*
S. Cass Weiland

010-8864-2049/3/AMERICAS