IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JOHN FAIRCHILD, SUSIE FAIRCHILD, | § § § | |
| *Plaintiffs,* | § | 6:19-CV-00029-ADA |
| | § | |
| v. | § | |
| | § | |
| CORYELL COUNTY, TEXAS, STEVEN RUSSELL LOVELADY, WESLEY HARLAND PELFREY, | § § § § | |
| *Defendants*. | § | |

## ORDER GRANTING DEFENDANT STEVEN RUSSELL LOVELADY'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Steven Russell Lovelady's Motion for Summary Judgment. ECF No. 33. The issues before the Court are whether defendant Lovelady has qualified immunity with respect to the Plaintiffs' allegation that he committed violations of excessive force contrary to established law; and whether defendant Lovelady has bystander liability for Defendant Pelfrey's alleged unconstitutional conduct. The Court finds that Defendant Lovelady is entitled to qualified immunity and that he has no bystander liability.

### I. BACKGROUND

Plaintiffs John Fairchild and Susie Fairchild, individually, and as Independent Administrators of, and on behalf of, the Estate of Kelli Leanne Page, and the heirs-at-law of Kelli Leanne Page ("Plaintiffs") filed their Original Complaint on January 30, 2019 against Coryell County, Texas, Steven Russell Lovelady, and Wesley Harland Pelfrey.

The following facts appear to be uncontested.[1] Kelli Leanne Page ("Page") was an inmate at the Coryell County jail and was housed in a separation cell from September 12, 2017 to October 8, 2017. Ex. A at Att. 3 at P-000708. Defendant Lovelady was assigned to be a shift corporal on October 7th and 8th. Ex. C. The fact that he was assigned on both of those dates is important as there was interaction between Lovelady and Page on both days that is relevant to the events that occurred on the 8th. To that end, on October 7th, Page squirted an unknown liquid substance through the food tray slot all over the left side of Defendant Lovelady's body and face during collection of the lunch food trays. Ex. A at Att. 4 at CoryellCty001149-001154 and Ex. C. Defendant Lovelady gave verbal commands and applied chemical agents following Page's refusal to obey the orders to be handcuffed. *Id*. Defendant Lovelady and Officer Tyrell Washington entered Page's cell and placed her on the wall while putting her in handcuffs. *Id*. Defendant Lovelady went separately to the hospital due to the unknown liquid substance and was released to return to work. Ex. C.

The following day, October 8, 2017, Page became very disruptive by banging on her cell door. Ex. B and Ex. C. Her disruptive conduct interfered with the maintenance of order not only with Page but also caused a disturbance with other inmates.[2] Defendant Lovelady was the shift corporal at the Coryell County Jail. Ex. C. It is extremely important to the Court that during that shift in which the underlying facts of this case occurred it is undisputed that the two Defendants Pelfrey and Lovelady were essentially the only two officers on the ground supervising the

---

[1] Additional factual background is provided in the other orders being entered simultaneously with this Order concerning the liability of Coryell County and Defendant Pelfrey. The Court has not repeated all of them in this Order but has taken all facts into consideration in the resolution of all three of the motions to dismiss.

[2] Defendant Lovelady submitted the affidavit of another inmate who averred that Page was causing a constant disruption in her cell and confirms that Defendant Lovelady attempted to resolve the issue by repeatedly attempting to talk to Page and persuade her to calm down.

inmates (in addition to a control room operator). *Id.* Page was housed in a single cell in the separation area of the jail. *Id.* "When working with inmates in the separation area, the Sheriff's Office requires that two officers are present when opening the doors to separation cells. A sign on the cell door states the following 'ATTENTION; SHALL BE 2 OFFICERS PRESENT WHEN OPENING SEPARATION DOORS SHALL BE 2 OFFICERS TO ESCOT INMATE TO AND FROM ANY ACTIVITY.'" *Id.*

The events that lead to the sad result in this case began early in the morning. At 7:48 a.m., Page began causing a disruptive situation by knocking on her cell door with her hand and appeared to push the communication system to speak with the control officer shortly thereafter. *Id*. Page continues to bang on the cell door and/or the window with her fist, hairbrush or hip/leg for several more minutes. *Id*. at 7:56:47, 7:57:50, 7:58:40, 7:59:02, 7:59:10, 7:59:30, 8:00:53, 8:01:04, 8:01:04, 8:01:33, 8:01:46, 8:01:54, and 8:02:02. For obvious reasons, Page's conduct was disruptive and therefore created a dangerous situation in the jail cell. In response to Page's misconduct, Defendant Lovelady went to Page's cell and ordered her to stop banging on the door. Ex. C and Ex. B at 08:02:51. This was an entirely reasonable order. Page refused to comply. Page then began an approximate eight (8) minute period of banging on the window with her hairbrush multiple times and used the communication button. Ex. C and Ex. B at 8:03:26, 8:03:36, 8:03:48, 8:03:58, 8:05:23, 8:05:43, 8:05:50 and 08:07:26–08:12:50. The other officer on the floor, Officer Pelfrey, arrived at her cell and stayed for approximately ten (10) minutes. *Id*. at 8:13–8:23. Both individual Defendants attempted to calm Page down before taking any physical action or entering her cell. The fact that her disruptive conduct diverted their attention to Page and that they had to spend an inordinate amount of time trying to calm her also took them away from their other duties, thereby creating a more dangerous situation in the jail. After Officer

Pelfrey left the cell door, Page again used the communication button and began to bang on the window with the hairbrush. *Id.* at 8:27:24 and 8:29. This establishes that in the unit where Pelfrey and Lovelady were working Page acted in a manner that was non-compliant and was disturbing other prisoners.

That both Officers took objectively reasonable steps to get Page to quiet down and comply before they ever opened the jail cell door cannot be disputed. At some point, the refusal by an inmate to obey lawful commands from the officers running the jail becomes not just a matter of an unruly inmate but threatens the overall security of the other inmates and of the entire jail. It is also important to note that at some point Page's non-compliance became a threat to her own personal safety. It is not beyond the imagination of the Court that had the Officers failed to enter the cell to try to obtain compliance and had Page suffered some medical issue caused by her own obesity and the stress of the conduct she was engaged in that there would be a suit against the same Defendants arguing that the Defendants acted unreasonably by *failing* to enter the cell and restrain Page.

Defendants' evidence establishes that Page's own conduct forced the Officers to take physical action to restrain her. Ex. B at 8:29:41. The facts include Page's refusal to put her brush down and attempts to conceal it, Lovelady's use of a chemical spray to attempt to subdue Page without use of physical force, Page's effort to grab Lovelady's groin, Page grabbing Lovelady's handcuffs and attempting to hide them underneath her, Lovelady's attempts to gain control of the handcuffs by applying two knee strikes and attempting to roll Page over to regain possession of the handcuffs, and Page biting Lovelady and kicking at his groin area and pushing him away. Defendant Lovelady was able to roll Page over and gain control of the handcuffs. In response she

again attempted to grab his groin area as he attempted to restrain her and get her handcuffed. During this effort, Page again attempts to bite Defendant Pelfrey.

It is at this point that Defendant Lovelady finally is able to apply the handcuffs to both of Page's wrists. Ex. B at 08:32:30. Defendant Lovelady straddled Page's legs/buttocks without putting any of his weight on her. *Id.* and Ex. C. Having secured her hands with the handcuffs and having taken a moment to calm themselves after the physical interaction Defendants Lovelady and Pelfrey rolled Page over and realized that she was not responding. *Id.* Defendant Lovelady took immediate action to try to resuscitate her. Defendant Pelfrey called immediately for assistance and they removed the handcuffs. Lovelady continued applying CPR until relieved by a deputy sheriff. *Id.* at 08:34:15–08:39:25 and Ex. C. Defendant Lovelady suffered an injury from the bite that Page had given him, and he went to the hospital to have that wound attended to. The evidence establishes that all these events happened in a dramatically brief period of time.

Therefore the fact scenario against which the Court must determine whether or not the Defendant Officers acted in a reasonable manner in terms of their use of force even with the given that Page was extremely obese is this: Page has created a potentially dangerous environment in the Coryell Jail for two days. Both officers (who are the only two officers on the floor) take reasonable non-physical steps to calm her. Rather than comply on the second day, Page refuses to comply, uses profanity, physically assaults the officers, and disobeys orders from both individual Defendants.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). A material fact is one that is likely to

reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is not genuine if the trier of fact could not, after an examination of the record, rationally find for the non-moving party. *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). As such, the burden of demonstrating that no genuine dispute of material fact exists lies with the party moving for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once presented, a court must view the movant's evidence and all factual inferences from such evidence in a light most favorable to the party opposing summary judgment. *Impossible Elecs. Techniques v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982). Accordingly, the simple fact that the court believes that the non-moving party will be unsuccessful at trial is insufficient reason to grant summary judgment in favor of the moving party. *Jones v. Geophysical Co.*, 669 F.2d 280, 283 (5th Cir. 1982). However, "[w]hen opposing parties tell two different stories, but one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

Once the court determines that the movant has presented sufficient evidence that no genuine dispute of material fact exists, the burden of production shifts to the party opposing summary judgment. *Matsushita*, 475 U.S. at 586. The non-moving party must demonstrate a genuinely disputed fact by citing to parts of materials in the record, such as affidavits, declarations, stipulations, admissions, interrogatory answers, or other materials; or by showing that the materials cited by the movant do not establish the absence of a genuine dispute. FED. R. CIV. P. 56(c)(1)(A)–(B). "Conclusory allegations unsupported by concrete and particular facts

will not prevent an award of summary judgment." *Duffy v. Leading Edge Prods.*, 44 F.3d 308, 312 (5th Cir. 1995). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *DIRECTV Inc. v. Robinson*, 420 F.3d 352, 536 (5th Cir. 2001) (internal citations omitted).

### III. ANALYSIS

#### A. Lovelady has Qualified Immunity

The Court first addresses whether Defendant Lovelady has qualified immunity that precludes him from liability with respect to the Plaintiffs' claims. Courts use a two-prong analysis to determine whether an officer is entitled to qualified immunity. *Cole v. Carson*, No. 14-10228, 2019 WL 3928715, at *5 (5th Cir. Aug. 20, 2019), *as revised* (Aug. 21, 2019). A plaintiff must show (1) the official violated a constitutional right; and (2) the constitutional right was "clearly established" at the time of the defendant's alleged misconduct. *Reed v. Taylor*, 923 F.3d 411, 414 (5th Cir. 2019). The Supreme Court held in *Pearson* that "the judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." 555 U.S. at 236. Although qualified immunity is an affirmative defense, the plaintiff bears the burden to rebut the defense and assert facts to satisfy both prongs of the analysis. *Brumfield*, 551 F.3d at 326. If a plaintiff fails to establish either prong, the public official is immune from suit. *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407 (5th Cir. 2007).

In *Morrow v. Meachem*, the Fifth Circuit examined whether an officer was entitled to qualified immunity from suit when he swerved his police SUV into the path of a fleeing motorcycle which resulted in the death of Moon, the driver of the motorcycle. 917 F.3d 870 (5th

Cir. 2019). The Fifth Circuit wrote: "[t]he second question – whether the officer violated clearly established law – is a doozy." *Morrow*, 917 F.3d at 874. Here, Plaintiffs bear the burden of proof "and the burden is heavy: A right is clearly established only if relevant precedent 'has placed the … constitutional question beyond debate.'" *Id*. (*citing Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (emphasis added)). One of the clear takeaways from the *Morrow* decision is that to survive a motion for summary judgment based on qualified immunity, the Plaintiff must be able to cite a controlling precedent that "squarely governs" the specific facts involved in the case.

The Fifth Circuit requires that the law must be so *clearly established* that even in the factual circumstances involved in this litigation, where events escalated extremely quickly, and went from officers attempting to pacify an inmate verbally into having to wrestle handcuffs away from her and restrain her as she is cursing them and physically assaulting them, every reasonable officer would recognize them immediately. Here, Plaintiffs must identify a controlling precedent that "squarely governs the specific facts at issue." *Morrow*, 917 F.3d at 876–877. Plaintiffs have not and cannot establish that there is controlling precedent rendering it beyond debate such that any reasonable officer would know, Page's rights pursuant to the Fourth and Fourteenth Amendments were violated. *See generally, id.*

Plaintiffs allege that Defendants Lovelady and Pelfrey violated Page's constitutional rights guaranteed by the Fourth Amendment and that these rights were clearly established. Plaintiffs allege that the conduct of the individual defendants was objectively unreasonable. In sum, Plaintiffs claim is that the Defendants could not have been objectively reasonable when they forced Page into a prone position on the floor of the cell and handcuffed her because was morbidly obese. Plaintiffs also allege that Defendants Lovelady and Pelfrey violated Page's rights guaranteed by the Fourteenth Amendment. *Id*. at ¶ 96. Specifically, Plaintiffs claim that

the Defendants' actions "constituted impermissible, unconstitutional, punishment of a pre-trial detainee" and that "there were no circumstances allowing Defendants Lovelady and Pelfrey to use the force they chose to use, in punishing [Page]." *Id.* at ¶¶ 96–97. It is well established that Fourth and Fourteenth amendment excessive force claims are analyzed pursuant to the same standard.

In this case, Defendant Lovelady was engaged in the exercise of discretionary duties and acted within the course and scope of his duties as a corporal at the Coryell County Jail, with the objectively reasonable expectation that his conduct was reasonable, lawful, and necessary in light of all attendant circumstances. The Court agrees with the defendant that the Plaintiffs in this case have failed to meet the extremely high burden that is required to overcome a defense of qualified immunity. Plaintiffs fail to cite to any direct case law showing that Lovelady's actions violated Page's clearly established constitutional rights.

It does not appear to be disputed that Page was morbidly obese and suffered from many health issues. But this is not a case in which the County or officers are accused of failing to provide accommodations for her health or obesity. Rather the issue becomes whether it was objectively unreasonable for the officers to take the actions that they did given that Page was in this medical condition. The Court finds that the actions taken by the officers were objectively reasonable given the situation that Page created where the officers were forced to take some form of physical action to calm Page down and get her under control.

The United States Supreme Court has established that excessive force claims should be analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 394–95 (1989); *see* U.S. Const. amend. IV. The core question is whether Defendant Lovelady's use of force was "objectively reasonable," that is, reasonable "in light of

the facts and circumstances confronting [the officer], without regard to [his] underlying intent or motivation." *Id.* at 397. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. The mere fact that the officers utilized physical effort to retrain Page does not per se violate the Fourth Amendment. The question is whether the decision to use force and the amount of force used were objectively reasonable and necessary in each particular situation. *Id.* at 397.

The question here is whether Defendant Lovelady "purposely or knowingly" used force against Page that "was objectively unreasonable." *Id.* Further, whether any threat was unreasonable should be viewed from the perspective of a reasonable officer facing the same circumstances and taking into consideration only what Defendant Lovelady knew at the time of the use of force. *Id.* Finally, an officer's decision regarding how much force to use is made "in haste, under pressure, and frequently without the luxury of a second chance." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992).

The undisputed evidence establishes that the chain of events that lead to the death of Page began with her causing a disturbance from her cell (which followed her physical misconduct against Lovelady the day before). Page's misconduct over the two-day period resulted in the use by Lovelady of small bursts of chemical agents from outside of the cell to try to quite Ms. Page. It included efforts on the part of Defendant Pelfrey to calm her down by trying to converse with her. Efforts were made to handcuff her without entering the cell. Eventually that led to Lovelady entering the cell to try to physically restrain Ms. Page in an effort to quiet her. Ms. Page resisted and actually physically assaulted Lovelady, including biting him. The Court cannot as a matter of law find that Lovelady's conduct with respect to trying to calm and then restrain Page was

unreasonable. The officers who interacted with Page clearly attempted to employ an escalating series of methods to quiet or restrain Page each time attempting to use the least physical invasive method available.

The Court has carefully considered several factors in determining whether Lovelady's conduct with respect to Page was objectively reasonable. The Court finds that Page herself created the need for the use of force and that the amount of force used was reasonable. The Court has considered the fact that Page was morbidly obese and finds that the use of force was objectively reasonable even in light of her obesity given that she physically resisted and actually attempted to physically injure and did physically injure the officers. Clearly the extent of the plaintiff's injury was extremely substantial but did not appear to be the likely result of applying the amount of force that was used. The officers in this case attempted to temper or to limit the amount of force used and only even entered her cell after she refused to comply with reasonable orders to be quiet. The amount of force used by the officers escalated only *after* Page seized the handcuffs which itself forced the officers to become more physical with her than had she simply complied with their lawful orders. The Court finds that Page had created a threat to not only her only security by being disruptive but was placing others at risk as well as they became agitated at the noise that she was creating. The threat that was perceived by the officers increased only after they entered the cell to restrain Page and she resisted. Had she calmed down in response to Pelfrey's talking to her that appears little likelihood that the officers would have entered her cell. The final factor of whether the plaintiff was actively resisting clearly mitigates in favor of the officers' motion for qualified immunity. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

As set out above, the test for qualified immunity includes two inquires: (1) whether the officer's conduct deprived the plaintiff of a clearly established constitutional right; and (2)

whether the "right at issue was 'clearly established' at the time of [the] alleged misconduct." *Pearson v. Callahan,* 555 U.S. 223, 232 (2009). In this case, it is impossible for the Court to find that the Defendant's conduct deprived the plaintiff of a clearly established right. To the contrary, Defendant Lovelady acted reasonably. Before engaging in any physical contact with Page, Lovelady first attempted to gain compliance by giving verbal commands; a show of force outside the cell door; continued verbal commands; and the use of chemical agents through the door. Next he engaged in a show of force and verbal commands once the cell door was opened; the use of chemical agents inside the cell; and soft hand compliance to place handcuffs on Page. Ultimately and unfortunately that led to Lovelady struggling to gain control of the weapons (the hairbrush and handcuffs) under Page's control; and the defensive responses to Page's continued resistance, biting of Defendant Lovelady's hands (and continued attempts to bite at the officers) and the kicks/grabs to the groin area.

Defendant relies on the decision in *Hill v. Carroll County, Miss.*, 587 F.3d 230 (5th Cir. 2009) to support his contention that he is entitled to summary judgment. In *Hill*, a woman died while being transported to jail in a manner that was very questionable on its face. The deputies placed her in the back of their car facedown and hog-tied and the officers testified that she had been hog-tied because she was combative upon her arrest. Unfortunately, she stopped breathing on the way to the jail. The exact cause of her death was never determined. Her estate sued the deputies who transported Loggins claiming she had been subjected to excessive force. The district court granted summary judgment for the deputies. The Fifth Circuit affirmed the district court's judgment, holding that there was no genuine issue of material fact "that the use of four-point restraints was objectively unreasonable." The Fifth Circuit also wrote that the plaintiff had failed to submit any evidence that the deputies "possessed subjective knowledge that their

chosen method of transporting Loggins posed a substantial risk of serious medical harm." The Court finds that Officer Lovelady was complying with the "[t]he primary duty of corrections officers is to maintain the safety and security of the inmates, jail staff, and the jail while complying with all mandates put forth by Texas Commission on Jail Standards." Lovelady's Ex. E at ¶ 8.

Plaintiffs have failed to provide any existing legal decision or precedent that squarely govern the specific facts at issue establishing that Lovelady's actions were objectively unreasonable given the physical resistance on the part of Page or that Lovelady's actions violated a clearly established constitutional right. To the contrary, Defendant Lovelady was engaged in the exercise of discretionary duties that included maintaining an appropriate environment in the jail and maintaining appropriate discipline. Therefore, the Court finds that he was acting within the course and scope of his duties as a corporal at the Coryell County Jail, and well within the objectively reasonable expectation that his conduct was reasonable, lawful, and necessary considering all attendant circumstances. Therefore, Defendant Lovelady is entitled to qualified immunity.

### B. Lovelady is Not Liable Under a Bystander Liability Theory

Law enforcement officers can sometimes be under a legal obligation to intervene to prevent the use of excessive force by fellow officers in their presence. Generally, "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). However, so-called bystander liability has been applied only to officers who fail to intervene to prevent the use of excessive force. *See Whitley v. Hanna*, 726 F.3d 631, 647 (5th Cir. 2013) (discussing bystander liability in excessive force cases).

The Court expressly rejects Plaintiffs' contention that Lovelady could be subject under the facts of this case to bystander liability based on a theory that he accepted Pelfrey's assistance in restraining Page. First, the Court has addressed the conduct of Pelfrey in a separate Order and has held that he did not utilize excessive force as a matter of law. But the Court wishes to make explicit that under the facts of this case that it believes that Officer Lovelady could not be held liable as a bystander because the Plaintiff cannot establish that Lovelady was present for an underlying constitutional violation, or that he could have known that a fellow officer (Pelfrey) was violating an individual's constitutional rights, or that he had a reasonable opportunity to prevent the harm, or that Lovelady chose not to act. *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). While it is axiomatic that mere presence at the scene is not enough to be held liable as a bystander and that the officer must have had time to appreciate the offending officer's use of excessive force and intervene, *Nowell v. Acadian Ambulance Serv.*, 147 F. Supp. 2d 495, 507 (W.D. La. 2001), the Court finds that Lovelady was not merely present during the events but that it is clear that because of the physical misconduct of Page that Lovelady had no opportunity to take any actions other than what were taken. Plaintiffs have failed to provide any existing precedent that squarely govern the specific facts at issue establishing that Lovelady's or Pelfrey's actions were objectively unreasonable and in violation of a clearly established constitutional right. The Court believes that this failure is not for lack of skilled advocacy by counsel for the Plaintiffs who have done a truly exceptional job in representing their clients. The Court is of the opinion that given the facts of this case it would be impossible to find a clearly established precedent that is the equivalent of the facts of this case where the Court did not find that the officers were protected by qualified immunity.

Other courts in this circuit have granted officers' motions for summary judgment when the undisputed evidence showed that a use of force was too brief for present officers to intervene. *See,* e.g., *Vasquez v. Chacon*, Civil Action No. 3:08-CV-2046-M (BH), 2009 WL 2169017, at *7 (N.D. Tex. July 20, 2009) ("[T]he short duration of alleged excessive force did not provide . . . reasonable opportunity to intervene."); *Gilbert v. French*, Civil Action No. H-06-3986, 2008 WL 394222, at *8 (S.D. Tex. Feb. 12, 2008) (reasoning that "mere seconds" was an insufficient amount of time "for officers to appreciate and react to a possible use of excessive force").

Thus, the Court **GRANTS** the officers' motion for summary judgment on the Plaintiffs' bystander-liability claim.

IT IS THEREFORE ORDERED that is Defendant Steven Russell Lovelady's Motion for Summary Judgment (ECF No. 33) is **GRANTED**.

SIGNED this 24th day of February, 2020.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE